1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7   MARK SHIN,                                    Case No.  20-cv-07363-WHO

8              Plaintiff,

9        v.                                       **ORDER DENYING MOTION TO
                                                  DISMISS COUNTERCLAIM**

10   ICON FOUNDATION,                             Re: Dkt. No. 77

11              Defendant.

12

13        Plaintiff Mark Shin moves to dismiss a class action counterclaim filed by defendant ICON

14   Foundation ("ICON"), arguing that ICON's claims of money had and received, unjust enrichment,

15   and restitution, and declaratory relief, are insufficiently pleaded or barred as a matter of law.  The

16   motion to dismiss is GRANTED in part and DENIED in part, with leave to amend.  ICON has

17   failed to sufficiently plead ownership of the cryptocurrency tokens at issue, as required for its

18   money had and received claim.  But the unique circumstances here support unjust enrichment as

19   an appropriate cause of action—as pleaded, Shin knowingly took advantage of a software defect to

20   arrogate to himself over 13 million ICX tokens, to the detriment of others in the ICON

21   Community.  ICON's claim for declaratory relief may also proceed, as it offers a remedy—the

22   destruction of the currency at issue—distinct from the surviving substantive claim.

23                                      **BACKGROUND**

24        This appears to be a case of first impression, involving the ownership of cryptocurrency.

25   The parties agree that Shin used a software glitch to create the cryptocurrency at issue.  They

26   disagree, however, as to who lawfully possesses it and what legal standards should apply.

27        The ICON Network hosts a "delegated proof of stake" blockchain protocol, which allows

28   for the creation and transaction of a cryptocurrency called "ICX."  Countercl. [Dkt. No. 69-1] ¶¶ 1,

United States District Court
Northern District of California

17. The ICON Network is decentralized—it is "not controlled or maintained by any single entity, but exists simultaneously on computers all over the world."[1]  *Id*. at ¶ 13.  All ICX holders have a say in the ICON Network's operation and governance, in part by selecting delegates (called "Public Representatives" or "P-Reps") to "serve in a governance role and to validate Network transactions." *Id*. at ¶¶ 17-20.  There are currently 143 P-Reps, however only the top 22 "Main P-Reps" validate transactions and govern the ICON Network, including the proposal and approval of any material software updates.  *Id*. at ¶¶ 19-20.  The ICON Network also has a publicly available constitution that outlines its guiding and operating principles for "ICONists"—those who participate in the ICON Network.  *Id*. at ¶ 21.

In order to select delegates, ICX holders "stake" and "delegate" their tokens as votes.  *Id*. at ¶ 18.  To encourage ICX holders to participate in this process, the ICON Network rewards users who stake their tokens.  *Id*. at ¶ 22.  ICX holders "receive staking rewards based on the amount of ICX they have staked for as long as it remains staked."  *Id*.  The Network sends the reward scores to the ICX holder's "wallet," which the holder can then redeem for ICX.  *Id*. at ¶ 25.  A user can redeem a reward score of 1,000 for 1 ICX.  *Id*.  However, ICX holders do not earn rewards for unstaking their tokens.  *Id*. at ¶ 22.

On August 22, 2020, the Main P-Reps approved a software update ("Revision 9") to the ICON Network.  *Id*. at ¶ 28.  Despite pre-release testing, the update contained a software defect that allowed users to generate and receive an "amount of tokens equal to the number of tokens that the user was attempting to unstake."  *Id*. at ¶¶ 29-30.

The same day that the Revision 9 update was released, Shin attempted to unstake 25,000 of his ICX tokens to redelegate them from one P-Rep to another.  *Id*. at ¶ 31.  Because of the glitch, he immediately received 25,000 tokens instead.  *Id*.  Shin repeated the process and, "in a matter of hours," had received almost 14 million new ICX tokens.  *Id*. at ¶¶ 33-34.  At the time, each token

---

[1] The party in this suit, the ICON Foundation, "was formed to develop and support the ICON Network."  Countercl. at ¶ 7.  The ICON Foundation is the largest holder of ICX tokens, owning about 10% of the total supply.  *Id*.  What ICON refers to as the "ICON Community" is broader, consisting of "owners of ICX, software developers, vendors . . . municipal governments, financial institutions, small and medium-sized businesses and universities, among others."  *See id*. at ¶ 13.

United States District Court
Northern District of California

United States District Court
Northern District of California

was worth about 65 cents, meaning the total haul was worth nearly $9 million. *Id.* at ¶ 35. Its value today is more than $21 million. *Id.*

Members of the ICON Community attempted to recover the ICX at issue from Shin, but he refused to return it. *See id.* at ¶ 47. ICON contends that Shin funneled the ICX tokens to third-party exchanges, relatives, and acquaintances "in an effort to put them beyond the reach of the Network." *Id.* at ¶¶ 41-42.

Shin filed suit on October 20, 2020, seeking declaratory judgment that he owned the ICX tokens at issue and alleging claims of conversion, trespass to chattel, and prima facie tort against the ICON Foundation. Dkt. No. 1. After two rounds of motions to dismiss, his case has narrowed to claims of conversion and trespass to chattel. *See* Dkt. No. 68.

On August 23, 2021, ICON filed a class action counterclaim against Shin, bringing two causes of action: money had and received, unjust enrichment, and restitution; and declaratory relief. *See* Dkt. No. 69-1. Shin filed this motion to dismiss on September 20, 2021.[2] Dkt. No. 77. I heard arguments from both parties on December 1, 2021.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted

---

[2] Shin alternatively argued that I should strike the class allegations in ICON's counterclaim, along with references to an ongoing criminal case related to the events described here. *See* Mot. to Dismiss ("MTD") [Dkt. No. 77] 21-24. This motion is DENIED in part and GRANTED in part. Motions to strike are "generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). Shin's arguments about whether the proposed class is contrary to ICON's theory of the case or whether the requisite commonality or typicality exist will be more thoroughly and better addressed on a motion for class certification. I will, however, strike from the counterclaim paragraph 49, which is unnecessary to the allegations at hand.

United States District Court
Northern District of California

unlawfully." *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts his allegations as true and draws all reasonable inferences in his favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment."  *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

As a preliminary matter, although ICON pleaded its first cause of action as "money had and received / unjust enrichment / restitution," the parties treated money had and received and unjust enrichment as separate claims in their briefing and at oral argument.  *See* Countercl. at 20-21.  I also treat them as separate claims, primarily because after accepting ICON's allegations as true and drawing all reasonable inferences in its favor, one better fits the unique facts and circumstances at hand.

## I.     UNJUST ENRICHMENT

Unjust enrichment, "which is synonymous with 'restitution,'" describes the theory that "a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted).  "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution."  *Id.* (citation omitted).  This is a form of equitable relief, which is "not

United States District Court
Northern District of California

1   appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956,

2   963 (9th Cir. 2009).  Unjust enrichment "applies where plaintiffs, while having no enforceable

3   contract, nonetheless have conferred a benefit on defendant which defendant has knowingly

4   accepted under circumstances that make it inequitable for the defendant to retain the benefit

5   without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009).  The

6   elements of a claim of unjust enrichment are: "(1) receipt of a benefit and (2) unjust retention of

7   the benefit at the expense of another." *Epic Games, Inc. v. Apple Inc.*, --- F. Supp. 3d ----, 2021

8   WL 4128925, at *125 (N.D. Cal. 2021).

9           Courts disagree as to whether unjust enrichment is a standalone claim under California

10   law.  *See, e.g., Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021)

11   ("California does not recognize a separate cause of action for unjust enrichment."); *Brooks v.*

12   *Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, at *11-12 (N.D. Cal. Aug.

13   16, 2021) ("Plaintiffs can raise a standalone unjust enrichment claim.").  However, the Ninth

14   Circuit has allowed a claim for unjust enrichment "as an independent cause of action or as a quasi-

15   contract claim for restitution." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir.

16   2016).  The California Supreme Court decided similarly in *Hartford Cas. Ins. Co. v. J.R. Mktg.,*

17   *LLC*, 61 Cal. 4th 988 (2015), when it allowed an independent claim for unjust enrichment to

18   proceed.  (The Ninth Circuit recognized the "clarification" of *Hartford* when reversing the

19   dismissal of a claim for unjust enrichment in *Bruton v. Gerber Prods. Co.*, 703 Fed. App'x 468,

20   470 (9th Cir. 2017)—an unpublished but still persuasive opinion).  Taken together, these cases

21   allow unjust enrichment as a separate cause of action.

22           Moreover, given the novelty of the issues at hand, unjust enrichment is an appropriate

23   cause of action here.  ICON has not sufficiently pleaded another claim that would provide an

24   adequate legal remedy, nor have the parties suggested a cause of action that better fits these facts.

25   Notably, there is no breach of contract claim.  Although Shin argued in his papers that ICON

26   pleaded the existence of an enforceable contract, referencing the ICON constitution, the parties

27   agreed at oral argument that there is no such contract between Shin and the ICON Foundation.

28   *See* MTD at 15-16; *see also* Tr. of Dec. 1, 2021, Proceedings [Dkt. No. 92] 3-5 ("[T]he

1    Foundation doesn't contend that it entered into a contract with Mr. Shin.") ("There is no contract

2    that binds the parties.").  This argument is supported by an inherent quality of the ICON Network:

3    its decentralized nature.  As ICON's counsel conceded at oral argument, even if the constitution

4    could be construed as a valid contract, it is unclear whether the ICON Foundation would be "in a

5    position to enforce the constitution because this is a decentralized network."  *See* Tr. at 4:22-24.

6    As argued thus far, an equitable cause of action best fits the unique case at hand.

7         The question, then, is whether ICON has sufficiently pleaded the elements of a claim for

8    unjust enrichment.

9         The benefit is clear: ICON alleges that Shin received almost 14 million new ICX tokens

10   with an estimated value at the time of nearly $9 million.  *See* Countercl. at ¶¶ 4, 33-35.  Shin does

11   not contest this—his arguments related to "benefit" are raised in the context of the money had and

12   received claim, which focuses on a benefit to the plaintiff, not the defendant.  *See* MTD at 9.

13        ICON has also adequately pleaded that Shin unjustly retained this benefit at the expense of

14   the ICON Community.  ICON alleges that by minting millions of new ICX tokens, Shin

15   "materially diluted the value of tokens" held by the ICON Community at the time.  Countercl. at

16   ¶¶ 3, 44.  Specifically, it argues that "Shin gained value for himself by misappropriating over 13

17   million tokens, and arrogated value to himself from the other members of the ICON Community

18   by causing the value of their tokens to decrease."  *Id*. at ¶ 44.  But for Shin's actions, ICON

19   contends, the present-day value of ICX would be "even higher" than the current estimate of $21

20   million.  *Id*. at ¶ 2.

21        Shin's strongest response was made with respect to the money had and received claim, but

22   it also applies here.  ICON has alleged that third-party exchanges froze approximately 6.7 million

23   of the ICX tokens at issue, and that the federal government has seized $15 million in assets

24   including "Exploited ICX or other crypto or fiat currency that Shin acquired with the Exploited

25   ICX."[3]  *See Id*. at ¶¶ 46, 48.  Shin argues that he "cannot have been enriched when the money he

26   received has been frozen by ICON and third parties and seized by the federal government."  Reply

27   _____

28   [3] ICON described the ICX at issue—meaning the tokens minted and acquired by Shin—as the
     "Exploited ICX."  *See* Countercl. at ¶ 1.

United States District Court
Northern District of California

1    [Dkt. No. 84] 10:7-9.

2         His point is not persuasive.  First, even if a "significant portion" of the ICX tokens was

3    frozen or seized, that does not necessarily account for the entire amount of tokens that Shin

4    acquired, nor the proceeds that purportedly resulted.  *See* Countercl. at ¶¶ 46.  For example, Shin

5    allegedly transferred at least 100,000 ICX tokens to his father and another 125,000 to an

6    acquaintance.  *See id*. at ¶ 42.  There is no indication from the counterclaim, as pleaded, that those

7    tokens have been recovered.  *See id*.  Based on the face of the counterclaim, it is plausible that

8    Shin retained at least some amount of the ICX tokens at issue or related proceeds.  ICON alleges

9    this in its opposition, when it asserts that at least some of the tokens were "not transferred to third-

10   party exchanges and . . . remain in wallets [Shin] holds or controls."  *See* Oppo. [Dkt. No. 82]

11   16:14-15.

12        Moreover, if a defendant could avoid a claim of unjust enrichment—or any claims sounded

13   in the principle—simply by funneling the improperly obtained benefit elsewhere, then such claims

14   would be rendered toothless.  That is the precise allegation against Shin, that he went to "extreme

15   lengths to transfer, convert, and launder the Exploited ICX in an effort to put them beyond the

16   reach of the [ICON] Network" and "to retain as much as possible of the Exploited ICX and the

17   proceeds therefrom."  *See* Countercl. at ¶¶ 41, 43.  The same is true if the government seizes the

18   benefit at issue.  In a criminal context, a bank robber cannot avoid conviction simply because the

19   federal government has seized the money that he purportedly stole, or because he gave that money

20   to a friend.  Commonsense compels a similar conclusion here.

21        For these reasons, ICON has sufficiently pleaded a claim of unjust enrichment, at least at

22   this stage of the litigation.  Shin's motion to dismiss is thus DENIED on this claim.

23   **II.     MONEY HAD AND RECEIVED**

24        To prove a claim for money had and received, a plaintiff must show: (1) the defendant

25   received money that was intended to be used for the plaintiff's benefit; (2) the money was not used

26   for the plaintiff's benefit; and (3) the defendant has not given the money to the plaintiff.  *English*

27   *& Sons, Inc. v. Straw Hat Rests., Inc.*, 176 F. Supp. 3d 904, 926 (N.D. Cal. 2016).  "The claim is

28   viable wherever one person has received money which belongs to another, and which in equity

United States District Court
Northern District of California

1    and good conscience should be paid over to the latter." *Id.* (internal quotation marks and citation

2    omitted).

3         The distinction between a claim for money had and received and one for unjust

4    enrichment, as I see it, is that the former requires one person to receive money "which belongs to

5    another." *See id.* This infuses an element of possession that ultimately sinks ICON's claim.

6

7         Shin argues that ICON's claim for money had and received fails because ICON failed to

8    plausibly allege that the ICX tokens at issue belonged to the ICON Community and instead made

9    only conclusory assertions about ownership. MTD at 9:17-28. He further contends that ICON

10   cannot show the "three primary indicia of ownership of personal property:" title, possession, and

11   control. *See id.* at 10:7-20 (citing 73 C.J.S. *Property* § 43 (2021)). Shin argues that members of

12   the ICON Community do not have title to newly generated ICX tokens, because title is reflected

13   on the blockchain and the ICX at issue were "first assigned by the blockchain to the person who

14   minted the ICX." *Id.* at 10:9-11. Next, Shin asserts that members of the ICON Community do not

15   possess newly generated ICX, as it is "unclear what it would even mean to possess ICX before it

16   comes into existence." *Id.* at 10:12-13. Finally, Shin contends that ICON Community members

17   cannot control newly generated ICX, as the tokens are first delivered to whomever staked the ICX.

18   *Id.* at 10:18-20.

19

20        ICON does not dispute that title, possession, and control are the primary indicators of

21   ownership. *See* Oppo. at 5:6-13. Instead, it contends that the ICX at issue "are a unique,

22   intangible asset that does not lend itself to the traditional concepts of title, possession, and control

23   upon creation." *Id.* at 5:7-9. ICON also argues that the counterclaim includes "detailed, non-

24   conclusory factual allegations regarding how and why the Network generates new tokens." *Id.* at

25   4:16-22 (citing Countercl. at ¶¶ 26, 39).

26

27        But ownership is central to a claim for money had and received. *See English & Sons*, 176

28

United States District Court
Northern District of California

United States District Court
Northern District of California

F. Supp. at 926 ("The claim is viable wherever one person has received money *which belongs to another*.") (emphasis added).  I agree that the unique nature of ICX raises legitimate questions about the applicable law.  *See* Order Granting in Part and Denying in Part Mot. to Dismiss ("Second MTD Order") [Dkt. No. 68] 8:16-17 ("It is clear that the parties strongly dispute . . . whether common law principles should apply in this unique context.").  However, ICON has proffered no other standard by which to evaluate ownership of the ICX at issue.  Without more, its argument that all ICX, including the tokens at issue, "belongs" to the ICON Community is conclusory.  ICON argues that new tokens are first generated onto the ICON network—not a user's or staker's computer—and "belong to the entire ICON Community, including all current holders of ICX" before they are delivered to a user's wallet.  *See* Countercl. at ¶¶ 26, 39.  But this does not address with specificity the traditional notions of title, possession, or control that determine whether property in fact "belongs" to someone.  Nor does ICON provide another standard by which to measure ownership.  Without more, ICON's claim of money had and received is too conclusory to proceed.

    ICON's claim of money had and received is therefore DISMISSED with leave to amend.[4]

───────────────────

[4] I disagree with Shin's argument that judicial estoppel bars ICON's allegations that the ICX tokens belong to the ICON Community and that those statements contradict prior judicial admissions.  Shin argues that ICON's point contradicts those it made in a previous round of motions, where ICON argued that "Shin did not take someone else's property in the traditional sense" and that the harm arose from the dilution of the value of ICON user's tokens.  MTD at 13:3-6 (citing Dkt. No. 63 at 3).  But ICON's position is not "clearly inconsistent" with the prior statements, nor were the latter "deliberate, clear, and unequivocal."  *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (stating that for judicial estoppel to apply, "a party's later position must be clearly inconsistent with its earlier position.");  *In re Twitter, Inc. Secs. Litig.*, No. 16-CV-05314-JST, 2020 WL 5904407, at *1 (N.D. Cal. Oct. 6, 2020) (holding that judicial admissions "must be deliberate, clear, and unequivocal.").  First, Shin's purported acts could have diluted the value of other ICX tokens *and* resulted in the taking of tokens owned by the ICON Community.  Moreover, ICON's counsel only asserted that the ICX at issue did not belong to the ICON Foundation, rather than the ICON Community.  *See* Tr. of April 28, 2021, Proceedings [Dkt. No. 56] 16:23-17:5 ("It's certainly not our position that those 14 million ICX belong to the Foundation.  They don't. . . . We don't contend that those tokens belong to us.  They belong to the ICON community in general.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## III.    DECLARATORY RELIEF

A court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Ninth Circuit has set forth two criteria in determining whether declaratory judgment is appropriate: (1) "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue;" and (2) "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (citation omitted).  "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  Fed. R. Civ. P. 57.  But "the availability of other adequate remedies may make declaratory relief inappropriate," as would be declaratory relief that is "needlessly duplicative" of the damages or relief requested under the substantive claims.  *See Tech. & Intell. Prop. Strategies Grp. PC v. Fthenakis*, No. C-11-2373-MEJ, 2011 WL 3501690, at *10 (N.D. Cal. Aug. 10, 2011) (internal citation omitted).

ICON seeks a declaration that:

(1) the ICX at issue was generated as a result of a mistake;

(2) Shin took undue advantage of an unintended malfunction in the Revision 9 update generating the ICX at issue;

(3) Principles of equity and good conscience require the return and/or destruction of the ICX at issue;

(4) Shin holds any proceeds or assets acquired with the ICX at issue in constructive trust for the benefit of the class; and

(5) Shin should be ordered to return for the benefit of the class any proceeds or assets acquired with the ICX at issue or, alternatively, the ICX at issue should be destroyed.

Countercl. at ¶ 64.

1   Shin argues that this claim is needlessly duplicative for two reasons.  First, he asserts that

2   the first two proposed declarations do not clarify the parties' relations nor resolve any controversy,

3   instead only duplicating ICON's unjust enrichment claim.  *See* MTD at 7:21-27.  Next, Shin

4   contends that the remaining three declarations "merely ask the Court to declare that ICON is

5   entitled to other remedies it seeks," rendering them unnecessary.  *Id.* at 8:3-15.

6   In response, ICON argues that its claim for declaratory relief offers an alternative remedy

7   from the other claim: the destruction of some of the ICX tokens at issue.  Oppo. at 16:11-23.  This,

8   ICON contends, "provides this Court with the discretion needed to fashion appropriate relief in an

9   action involving a new and novel form of property."  *Id.* at 16:19-21.

10   I will allow the claim for declaratory relief to proceed.  ICON is correct that it offers a

11   distinct remedy in the form of destroying some of the ICX at issue.  The availability of another

12   remedy is particularly important in a case like this, which involves novel forms of property and

13   related legal issues.  As this litigation continues to take shape, I see the value in preserving flexible

14   remedies for whenever it might be resolved.  Allowing the claim for declaratory judgment to move

15   forward helps do that, providing another avenue to "terminate and afford relief from the

16   uncertainty, insecurity, and controversy giving rise to the proceeding."  *See McGraw-Edison Co.*,

17   362 F.2d at 342.

18   ICON's claim for declaratory relief is unlike Shin's, which I earlier dismissed as

19   needlessly duplicative.[5]  *See* Order Granting Mot. to Dismiss ("First MTD Order") [Dkt. No. 57]

20   20-21.  Shin sought declaratory judgment that "the ICX tokens issued on August 22, 2020, are his

21   property and that he is entitled to exercise his property interests in the ICX tokens that he had

22   accumulated prior to that date, and in the other types of tokens that he had acquired before and

23   after that date."  FAC [Dkt. No. 28] ¶ 119.  Shin later argued that his proposed declaratory relief

24   was distinct from the relief sought in his other claims, because he could not recover "damages for

25   the harm that would ensue if, post-judgment, ICON continues to claim his lack of ownership or

26   continues to take steps to interfere with his rights of ownership."  *See* Oppo. to ICON's MTD

27   _____

28   [5] Although I granted Shin leave to amend his claim for declaratory relief, he did not include the
claim in his Second Amended Complaint.  *See* First MTD Order at 21; SAC [Dkt. No. 58] 27-29.

United States District Court
Northern District of California

[Dkt. No. 45] 8.  But Shin's purported ownership of the ICX tokens would necessarily be decided in the adjudication of both his conversion and trespass to chattels claims, rendering any such declaratory judgment needlessly duplicative.  A declaratory judgment asserting Shin's ownership offers no greater clarity or settlement of the rights between the parties than would a decision on these substantive claims.

Accordingly, Shin's motion to dismiss ICON's claim for declaratory relief is DENIED.

### CONCLUSION

For the above reasons, Shin's motion to dismiss ICON's counterclaim is GRANTED in part and DENIED in part, with leave to amend.  The claim for unjust enrichment and restitution, as well as declaratory relief, may proceed.

**IT IS SO ORDERED.**

Dated: December 27, 2021



William H. Orrick
United States District Judge