UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK SHIN,

        Plaintiff,

    v.

ICON FOUNDATION,

        Defendant.

Case No. 20-cv-07363-WHO

**ORDER ON MOTION TO APPOINT RECEIVER**

Re: Dkt. No. 120

        This case arises from plaintiff and counter-defendant Mark Shin's use of a software glitch to create millions of dollars' worth of cryptocurrency tokens. The Federal Bureau of Investigations ("FBI") seized from Shin cryptocurrency and fiat currency traceable to the tokens that he created, which are being held pending the completion of a criminal case against Shin in Colorado. Should Shin be acquitted or otherwise not convicted in the Colorado case, and the FBI be required to release those seized assets, defendant and counter-claimant the ICON Foundation ("the Foundation") seeks an order that would require the FBI to either deliver them to a court-appointed receiver to hold or deposit them into the Court Registry during the pendency of this action.

        The motion is GRANTED. Although Shin contends that he has meritorious objections to the motion and had the opportunity to raise them, he did not do so. Instead, his opposition is purely procedural and unconvincing, as the stipulated stay of this litigation included a carveout for motions such as this. Moreover, the ICON Foundation has shown a need for holding the seized assets until this matter is complete, precluding Shin's ability to move the tokens that he created and the risk that he could conceal the seized assets if they were released. As with any interlocutory order, Shin may file a motion for leave to file a motion for reconsideration pursuant

1  to Civil Local Rule 7-9. For now, the ICON Foundation has satisfactorily shown why a receiver is
2  warranted.

## BACKGROUND

The ICON Network, a decentralized computer system, hosts a blockchain protocol that allows for the creation, use, and transaction of a cryptocurrency called "ICX." *See* Mot. [Dkt. No. 120] 1:3-6; Kim Decl. ¶ 3. In August 2020, Shin discovered a software glitch that allowed him to generate and deliver to himself nearly 14 million ICX tokens, which the ICON Foundation asserts were valued at nearly $9 million at the time. Mot. at 2:19-3:8. The ICON Foundation alleges that Shin "went to extreme lengths to transfer, convert, and launder" these tokens "in an effort to put them beyond the reach of the [ICON] Network," including by transferring the tokens to numerous different accounts and cryptocurrency exchanges, using the tokens to acquire other cryptocurrencies and fiat currencies, and moving large amounts of the ICX to family and friends, including relatives living overseas. *Id*. at 3:9-4:4, 8:22-27.

The parties do not dispute that Shin generated the tokens using this glitch; instead, the case centers on who lawfully owns them. Shin sued the ICON Foundation in October 2020, seeking declaratory judgment that he owned the ICX tokens at issue and alleging claims of conversion, trespass to chattels, and prima facie tort. Dkt. No. 1. After two rounds of motions to dismiss, his case has narrowed to claims of conversion and trespass to chattels. *See* Dkt. Nos. 57, 68. The ICON Foundation has filed counterclaims of money had and received, unjust enrichment, and declaratory relief. Dkt. Nos. 69, 100.

Shin is currently being criminally prosecuted over the incident in Colorado state court ("the Colorado case" or "the Colorado matter"), which ordered the FBI to freeze or hold certain assets that it seized from Shin. *See* Mot. at 4:24-5:5; Stay Order [Dkt. No. 106] 2:7-18. According to the Foundation, the FBI is holding approximately $7 million of crypto and fiat currency traceable to the ICX tokens that Shin generated. Mot. at 4:9-23 (citing Wanger Decl. ¶¶ 5-7).

In February 2022, the parties stipulated to a stay of this case, which I granted, "pending the resolution of the Colorado criminal action by verdict, judgment, dismissal of the indictment or

United States District Court
Northern District of California

other similar disposition of the pending criminal charges against Shin." Stay Order ¶ 1. Two provisions of that stipulation are relevant to the motion at hand. The first is found at Paragraph 2:

> The parties agree that in the event that Shin makes any motion or application in any state or federal proceeding—including but not limited to the Colorado federal action, the Colorado criminal action, or the Colorado civil forfeiture action—for the release, return or transfer to Shin of any or all of the seized assets (an "Asset Release Application"), or in the event that Shin receives advance notice that any or all of the seized assets are to be released, returned or transferred to Shin, counsel for Shin shall (a) provide notice to the court in which Shin makes an Asset Release Application (or the court or governmental authority in or from which Shin received notice of the potential release of the seized assets) of this stipulation; and (b) provide notice to counsel for the Foundation as soon as reasonably possible after (but in no event more than 3 business days after) the filing of any such Asset Release Application or Shin's receipt of notice of an impending release, return or transfer of the seized assets in order to allow the Foundation sufficient time to oppose such motion, application, release or return and to seek a temporary restraining order, an injunction, the appointment of a trustee or receiver, or any other provisional relief with respect to such seized assets, and Shin shall have the right to oppose any such application by the Foundation for any reason other than the fact of the parties' stipulation herein.

*Id*. ¶ 2.

The second relevant provision is found in the next paragraph:

> The parties agree that the stay of this action does not extend to, and shall not prevent the Foundation from seeking a temporary restraining order, an injunction, the appointment of a trustee or receiver, or any other provisional relief with respect to any or all of the seized assets or contested assets.

*Id*. ¶ 3.

The Colorado case went to trial in May 2023, and ended on June 1 in a mistrial due to a deadlocked jury. *See* Oppo. [Dkt. No. 121] 1:7-10 (citing Burshteyn Decl. ¶ 2). A new trial has been scheduled for November 14, 2023. *See id*. at 1:11-12 (citing Burshteyn Decl. ¶ 3). The ICON Foundation brought this motion on May 17, 2023. Dkt. No. 120.

## LEGAL STANDARD

In a diversity action such as this, federal law governs whether to appoint a receiver. *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009).[1] The Ninth Circuit has

---

[1] Although the ICON Foundation's motion alternatively seeks an order requiring the FBI to deposit the seized assets into the Court Registry under Federal Rule of Civil Procedure 67, it

3

cautioned that "appointing a receiver is an extraordinary equitable remedy, which should be applied with caution." *Canada Life*, 563 F.3d at 844 (citation and quotations omitted).

That said, a district court has "broad discretion in appointing a receiver." *See id.* at 845. While there is "no precise formula for determining when a receiver may be appointed," the Ninth Circuit has articulated "a host of relevant factors" that may be considered, which include:

> (1) whether the party seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct, by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the probability of irreparable injury to plaintiff's interest in the property; and (7) whether the plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Id*. at 844-45 (citations omitted and cleaned up). The Ninth Circuit has also considered "whether the property was of insufficient value to insure payment, and whether the defendant was of doubtful financial standing." *Id*. at 844. "[N]o one factor is dispositive." *Id*. at 845.

### DISCUSSION

Shin's opposition is wholly procedural. He first argues that the Foundation's motion is "inconsistent with the Court's stay" of this action because the Colorado matter is ongoing and "[u]ntil there is a trial that results in an acquittal or conviction, this motion is not ripe for adjudication." Oppo. at 1:3-13. Shin reads Paragraphs 2 and 3 of the Stay Order together, and contends that they require notice that the seized assets are to be released, or that he intends to seek their release, before the ICON Foundation pursues the motion at hand. *Id*. at 1:14-21.

Shin's interpretation of the Stay Order belies its plain language. Paragraph 2 requires Shin to notify the Foundation and the Court if he "makes any motion or application in any state or federal proceeding," including the Colorado matter, "for the release, return or transfer to Shin of

---

acknowledges that its request "does not fit neatly into Rule 67, as the seized assets are being held by the FBI, not the party making the motion (or any party to this action)." Mot. at 6:7-21. The bulk of the motion focuses on whether a receiver should be appointed under Rule 66 and the factors articulated in *Canada Life*. *See id*. at 6:22-10:24. Because the Foundation's request falls within Rule 66 and *Canada Life* provides a clear framework, I focus my attention there.

4

any or all of the seized assets," or if Shin "receives advance notice that any or all of the seized assets are to be released returned, or transferred to Shin." Stay Order ¶ 2. Paragraph 3 expressly provides that the stay "does not extend to, and shall not prevent the Foundation from seeking . . . the appointment of a trustee or receiver, or any other provisional relief with respect to any or all of the seized assets or contested assets." *Id*. ¶ 3. Nothing within Paragraph 3 indicates that it is dependent on Paragraph 2, either expressly or impliedly. Instead, the paragraphs address separate issues: The notice that Shin must provide the court and the Foundation should he seek the seized assets, or learns that they are to be released (Paragraph 2); and the Foundation's independent ability to seek provisional relief regarding the seized assets (Paragraph 3). This motion falls squarely within the bounds of Paragraph 3.

Shin further argues that litigating this motion before the conclusion of the Colorado case will prejudice him. *See* Oppo. at 1:22-2:8. He contends that because the assets are frozen, Shin "does not have the resources to fully oppose defendant's motion, even though there are many meritorious grounds to oppose." *See id*. at 2:3-4. But this problem would persist even if this motion were litigated later. The question is whether a receiver should be appointed to hold the seized assets if they are released at the conclusion of the Colorado case. Regardless of whether Shin litigates this motion now or in November, the assets will not be in his possession. He has not shown any prejudice unique to deciding it now.

At the hearing on this motion, Shin's counsel argued that he had merits-based objections to the motion that depended on the outcome of the Colorado trial, and that this motion should be litigated after that matter concludes. Shin had the opportunity to raise those merits-based objections when opposing this motion, but made his procedural arguments instead, which are unpersuasive. Instead, the ICON Foundation has shown that appointing a receiver is appropriate, as many of the factors articulated in *Canada Life* weigh in favor of doing so.

The ICON Foundation has asserted valid counterclaims for money had and received, unjust enrichment, and declaratory relief. *See* Dkt. Nos. 97, 100.[2] It further alleges that Shin acted

---

[2] The claims for unjust enrichment and declaratory relief survived Shin's motion to dismiss. *See* Dkt. No. 97. Although I dismissed the Foundation's money had and received claim with leave to

5

fraudulently, both when he manipulated the software glitch to create the ICX tokens and when he transferred or converted them. Mot. at 8:18-27; *see also* Dkt. No. 100 ¶¶ 1, 3. The latter allegations also tie into the third *Canada Life* factor: "whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered." *See* 563 F.3d at 844 (quotations omitted). The allegations that Shin moved the ICX tokens in a number of ways—including funneling them through other exchanges and to relatives overseas—supports a finding that the seized assets could be concealed upon their release. So does the ICON Foundation's allegation that some of the ICX that Shin generated "still has not been found, traced or seized, meaning that to date, Shin was successfully able to conceal it both from the Foundation, as well as from the FBI." *See* Mot. at 8:25-27. Taken together, these allegations indicate that: (1) Shin is capable of moving ICX tokens beyond reach; and (2) has already done so. This is one of the strongest factors that supports appointing a receiver to hold the seized assets until this case is over.

Additional factors do as well. Given the unique nature and estimated value of the seized assets at issue, legal remedies would be an inadequate remedy as compared to their return. Because the ICON Foundation seeks a receiver only to hold the seized assets (which would be unavailable to Shin regardless of when this motion is litigated) and not Shin's other assets, any risk of prejudice to Shin is mitigated and outweighed by the harm the Foundation would suffer if a receiver were not appointed. The interests that the ICON Foundation seeks to protect will also be well-served by appointing a receiver, which would ensure that the seized assets cannot be concealed or otherwise moved as this case is decided. Finally, Shin is in doubtful financial standing—his previous lawyers placed a charging lien on any recovery for the payment of attorneys' fees, and Shin hired new attorneys to litigate this motion on limited grounds. *See* Dkt. No. 116; *see also* Oppo. at 2 n.3. As the ICON Foundation notes, it is possible that Shin would use part of the seized assets to pay his attorneys and thereby dissipate some of the seized assets. *See* Reply [Dkt. No. 125] 2:15-17. This too cuts in favor of appointing a receiver to hold the seized assets, if and when they are released by the FBI, pending the completion of this matter.

---

amend, Shin did not challenge the amended claim before this case was stayed. *See id.*; *see also* Dkt. Nos. 100, 106.

**CONCLUSION**

The ICON Foundation's motion to appoint a receiver is GRANTED. As stated in my Minute Order from the June 21, 2023, hearing, the parties should meet and confer as to the appropriate qualifications of the receiver and attempt to agree upon an appropriate candidate. If they cannot stipulate to one, they may file competing orders for an appointment of a receiver for my consideration. Any filings are due by July 10, 2023.

**IT IS SO ORDERED.**

Dated: June 28, 2023



William H. Orrick
United States District Judge