UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SHIN,<br><br>    Plaintiff,<br><br>    v.<br><br>ICON FOUNDATION,<br><br>    Defendant. | Case No. 20-cv-07363-WHO<br><br>**ORDER RESOLVING DISCOVERY AND CASE MANAGEMENT SCHEDULE DISPUTES AND RECONSIDERATION MOTION**<br><br>Re: Dkt. Nos. 147, 151, 155, 157 |

Before the court are several disputes that plaintiff Mark Shin has raised in the past month. First, he seeks leave to file a motion for reconsideration of my order appointing a receiver. Motion for Leave to File Motion for Reconsideration ("Reconsideration Motion") [Dkt. No. 147]; *see also* Order on Motion to Appoint Receiver [Dkt. No. 129]. Next, he seeks to extend the discovery period by "at least 90-days." He cites the recent resolution of a state court criminal case in his favor, his counsel's (relatively) recent appearance, the factual and procedural complexity of the case, and numerosity of claims as "good cause" for this extension. Motion to Revise Case Management Schedule ("CMS Motion") [Dkt. No. 151]; Joint Letter Brief Regarding Plaintiff's Request to Extend Case Management Schedule ("CMS Letter") [Dkt. No. 157]. Related to that request, he also seeks specific information from ICON Foundation, outlined in a separate joint discovery letter. He argues that ICON has been intentionally obfuscating important information and identities of witnesses from him and asks this court to act on his behalf to overcome that obfuscation. Joint Discovery Letter Brief ("Discovery Letter") [Dkt. No. 155].[1]

---

[1] Most issues raised in the pending motions and joint letters have been raised by Mr. Shin, but ICON Foundation did request that Mr. Shin "produce all communications related to the Disputed

1    Defendant ICON Foundation ("ICON") opposes all of Shin's requests. With respect to the 90-day discovery extension, ICON points out that Shin was already granted two case management schedule extensions previously and did not comply with those timelines. Opposition to CMS Motion ("Oppo.") [Dkt. No. 156] 3-5. In answer to my questions at the Case Management Conference on February 6, 2024, it noted that Shin never took a Fed. R. Civ. P. 30(b)(6) deposition despite having ample opportunity to do so. It argues that Shin has failed to show good cause for once again modifying the Case Management Schedule, that he has failed to act diligently and should not be allowed to once again extend discovery when he cannot identify what new information he can obtain that he was unable to seek in the previous three years.

These matters are all fully briefed, and I discussed them with the parties at the Case Management Conference on February 6, 2024. I will rule on them now. The hearing set for February 21, 2024, is VACATED.

### A. Reconsideration

I DENY Shin's motion for reconsideration of the Receivership Order that I issued on June 28, 2023. *See* Reconsideration Motion; *see also* Order Granting Motion to Appoint Receiver ("Receivership Order") [Dkt. No. 129]. That order arose from ICON's motion that in the event Shin is acquitted or otherwise not convicted in the then-pending Colorado state court case and the FBI is required to release the cryptocurrency and fiat currency traceable to the tokens that he had created using the bug, the FBI should be ordered to deliver those tokens to a court-appointed receiver. I granted ICON's motion because it showed a need for holding the seized assets to preclude Shin from concealing or spending them.

The Colorado state court's decision to dismiss the criminal charges that were pending against Shin does not substantively change the need for the receiver. If anything, it strengthens the need for it. My reasons for appointing the receiver are articulated in the Receivership Order. I considered the *Canada Life* factors that Shin asks me to reconsider now in light of the Colorado decision. My evaluation of those factors and their application to Shin's situation is unchanged. In

---

ICX, including his communications with state and federal tax authorities." Discovery Letter, 6. Mr. Shin has only nominally opposed this, and agreed to supplement his production.

2

1 first appointing the receiver, I determined that the property was in "imminent danger of being lost, concealed, injured, diminished in value, or squandered," based largely on ICON's allegations that Shin moved the ICX tokens in numerous ways, including funneling them through other cryptocurrency exchanges and transferring them to relatives overseas. *See* Receivership Order 5:25-6:7 (quoting *Canada Life Assurance Co. v. LaPeter*, 560 F.3d 837, 843 (9th Cir. 2009)). That risk is not mitigated by Shin's acquittal in Colorado.

Other factors remain unchanged as well. Legal remedies would still be an inadequate remedy as compared to the return of the seized assets in question, given their size and estimated value. The interests that ICON seeks to protect via the receivership will still be well-served by maintaining the receiver. In short, all these factors cut in favor of maintaining the receiver to hold the seized assets pending completion of this litigation.

**B.    Discovery**

**1.    90-Day Extension**

I will not grant Shin the 90-day discovery extension that he seeks. He argues that "good cause" exists because his new counsel only appeared in the case five months ago, the case is factually complicated and involves "multiple financial entities" and a "complicated cryptocurrency network," the P-Reps are still unidentified, that there are other, also unidentified ICON members who received bug-generated ICX and were not prosecuted, and there are a "significant number" of claims, including possible new claims to be developed in discovery. *See* CMS Motion 2:13-23. All of that may be true, but it does not justify reopening discovery generally for 90 days.

This matter has been pending for three years. It has been litigated in Colorado where Shin had counsel, and his new counsel has been in place for at least five months. I have granted him two modifications to the Case Management Schedule already. *See* Dkt. Nos. 33 (original case management schedule), 73 (modified), 142 (modified, current). He has had plenty of opportunity to conduct discovery. The production of documents that Shin describes was not so voluminous to make it impossible for his new counsel to evaluate it and timely serve subpoenas and interrogatory requests. *See id.* 2:24-3:6. Shin complains that Thomas Aellis could not be deposed until January 23, 2024, roughly two weeks after he was originally scheduled to be deposed, but this the kind of

case delay often occurs in litigation and is not a reason to reopen discovery. *Id.* 3:23-25.  The same is true for the other factors that Shin argues show good cause for a 90-day extension--the ongoing legal action in Colorado, the time spent preparing for mediation, and the holidays were all foreseeable by Shin and his team. *See id.* 4:5-10.   I agree with ICON that it is inappropriate to reopen discovery generally.

That said, Shin indicates that he has yet to obtain clarity over how others who benefited from the software bug were treated and how the decision to take his tokens was made.  He characterizes ICON's document productions as "systematically deficient" and states that throughout discovery, "at almost every turn there would be a crucial piece of discovery that ICON . . . failed to produce" and that its witnesses "feign[ed] ignorance and refuse[d] to disclose key information."  Reply in Support of CMS Motion ("Reply") [Dkt. No. 158] 6:1-8.  He also alleges that Shin's counsel has been able to "prove that yet another P-Rep had gotten away with free ICX" and that another "ICONBet community member who was actually rewarded by ICON for reporting Mr. Shin had gotten away with free ICX."  Reply 6:7-10.  He seeks the answers to more specific technical questions as well.

It is mystifying to me that Shin has not previously requested a Fed. R. Civ. P. 30(b)(6) deposition that would tie down ICON's knowledge and position with respect to important issues in the case.  While that is not the defendant's fault, I am concerned that it would be difficult to conduct a fair trial without ICON's position having been squarely presented pretrial.  I am cognizant of Shin's characterization of ICON as borderline obstructive throughout document production, and of ICON's witnesses' alleged uncooperative behavior during the (admittedly sparse) depositions.  Without taking sides in that dispute, I want to ensure that ICON's relevant conduct and knowledge is sufficiently ventilated prior to trial.

Accordingly, within thirty days of the date below I will allow Shin to take one Fed. R. Civ. P. 30(b)(6) deposition for no more than seven hours to, among other things, better understand ICON's knowledge and conduct with respect to him, the identities of relevant P-Reps, and how and why those P-Reps and decision-makers chose to discipline him as opposed to other individuals who received bug-generated ICX.

4

### 2. Digital Wallets

Shin asks that I order ICON to produce "all ICX digital wallets known to be controlled by any of its council members, employees, agents, P-Reps, service providers, and other affiliates." Discovery Letter 3-4. He claims that ICON is "shielding Shin from the full scope of the true facts and access to material witnesses." Discovery Letter at 2. He contends that his analysis of the ICON blockchain transaction history has been incomplete because ICON failed to produce the documents he requested, but that "recent production" has shown "various connections" between the other individuals who received bug-generated ICX and the ICON team. *Id*. He says that without the digital wallet information, he cannot determine among these individuals (a) who used the bug, (b) what their relationship was to ICON, (c) what they did with their ICX, and (d) how they knew about the bug. Discovery Letter 2. He proposes that the simplest solution is for ICON to produce all the digital wallet information known to be controlled by ICON affiliates. *Id.* ICON protests that it has already produced records to Shin identifying "all 395 wallet addresses" of the 395 "affected accounts" that received bug-generated ICX. *Id.* at 3.

I do not see how Shin's newest request—unspecific as it is—will prompt ICON to produce more informative or comprehensive discovery. As ICON points out, Shin has not identified and seemingly cannot identify any of the 395 bug-affected wallet addresses that he contends is associated with ICON or its affiliates. It argues that Shin's most recent request is no more than a fishing expedition to discover confidential financial information after ICON's production in response to his initial request yielded unsatisfactory results. Discovery Letter 4.

Perhaps the Fed. R. Civ. P. 30(b)(6) deposition will provide the answers Shin needs, or that he will be able to highlight ICON's allegedly unsatisfactory responses on material issues that would lead me to reconsider whether to reopen discovery. At present, he has not succeeded in doing so.

### 3. Blockchain IP Address Log Data

Shin also requests "IP log data related to *all* the digital wallets who have benefited from the bug," *see* Discovery Letter 5. ICON protests that it already produced all the IP Address log data that Shin requested on February 5, 2024, four days after the discovery cut off. *Id.* But Shin

5

1 claims that ICON did not produce IP log data for "any transactions involving the user who
2 triggered the bug 44 times." *Id.* I ORDER that ICON supplement its production to Shin on
3 February 5 with any log data it has for the user who allegedly "triggered the bug 44 times." To the
4 extent that ICON has possession of and did not comply with Shin's request for log data for the
5 complete time frame between Revision 9 and Revision 10, it should do that as well. *See id.* 5.

6 Shin may take a Fed. R. Civ. P. 30(b)(6) deposition of ICON within the next 30 days. That
7 and the discovery required in the preceding paragraph are the extent to which I am currently
8 modifying the Case Management Schedule that I set on September 5, 2023,. Dkt. No. 142. If the
9 deposition discloses information that had been requested and should have been produced earlier,
10 and the parties cannot agree on additional discovery, they may bring the dispute to my attention
11 via a dispute letter.

**IT IS SO ORDERED.**

Dated: February 20, 2024

William H. Orrick
United States District Judge