1   Christopher L. Wanger (CA Bar No. 164751)      Jason Gottlieb (NY Bar No. 4056008)
    cwanger@manatt.com                             *Admitted pro hac vice*
2   MANATT, PHELPS & PHILLIPS, LLP                 jgottlieb@morrisoncohen.com
    One Embarcadero Center, 30th Floor             Michael Mix (NY Bar No. 5020201)
3   San Francisco, CA 94111                        *Admitted pro hac vice*
    Telephone: (415) 291-7400                      mmix@morrisoncohen.com
4   Facsimile: (415) 291-7474                      MORRISON COHEN, LLP
                                                   909 Third Avenue
5   Misa K. Eiritz (CA Bar No. 307513)             New York, NY 10022-4784
    meiritz@manatt.com                             Telephone: (212) 735-8600
6   MANATT, PHELPS & PHILLIPS, LLP                 Facsimile: (212) 735-8708
    2049 Century Park E, #1700
7   Los Angeles, CA 90067
    Telephone: (310) 312-4000
8   Facsimile: (310) 312-4224

9

10  *Attorneys for Defendant and Counterclaimant,*
    ICON Foundation

11                      UNITED STATES DISTRICT COURT

12                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14  MARK SHIN,                                     Case No. 3:20-CV-07363 (WHO)

15            Plaintiff,                            **DEFENDANT/COUNTERCLAIMANT
                                                    ICON FOUNDATION'S NOTICE OF
16       v.                                         (1) MOTION AND MOTION FOR
                                                    ATTORNEY'S FEES AND COSTS; (2)
17  ICON FOUNDATION,                                REQUEST FOR LEAVE TO FILE
                                                    MOTION FOR PARTIAL
18            Defendant.                            RECONSIDERATION OF ORDER ON
                                                    REMEDIES; AND MEMORANDUM
19                                                  OF POINTS AND AUTHORITIES IN
                                                    SUPPORT THEREOF
20

21                                                 Hearing date: February 26, 2025
                                                   Time:         2:00 pm
22  AND RELATED COUNTERCLAIM                        Judge:        Hon. William H. Orrick
                                                   Courtroom:    2, 17th Floor
23

24                                                 Complaint filed:   October 20, 2020

25

26

27

28

**TO ALL PARTIES AND TO THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 26, 2025, at 2:00 pm, before the Honorable William H. Orrick of the United States District Court for the Northern District of California, Defendant and Counterclaimant, ICON Foundation ("ICON"), will and hereby does move this Court for an order awarding ICON its attorney's fees and costs pursuant to the common fund and substantial benefit doctrines in an amount equal to the greater of (1) 30% of the value of the cryptocurrency assets it recovered in this matter, which value shall be determined upon their liquidation by the Receiver; or (2) $3,471,594 representing ICON's fees and costs using the lodestar approach. If the recovered assets were liquidated for their current value, they would generate approximately $16.091 million in proceeds, which on a 30%-percentage-of-the-fund basis would translate to an award of $4,827,154. Such an award is appropriate based on the effort and expense ICON incurred to recover the cryptocurrency at issue and to secure the precedent-setting rulings in this matter for the benefit all ICX holders.

ICON also seeks leave to file a motion for reconsideration of that portion of the Court's Order on Remedies (ECF No. 211) in which the Court declined to require conversion of the non-ICX crypto-assets held by the Receiver back into their original ICX form prior to destruction. ICON respectfully submits that, in order to undo the price-reducing effect caused by Shin's and his transferees' sales of more than 5.3 million of bug-generated ICX for other cryptocurrencies, it is critical that such assets be ordered exchanged back into their original ICX form prior to destruction. Absent such an order, a significant aspect of the harm caused by Shin's exploit will go unremedied.

This motion is made pursuant to Federal Rule of Civil Procedure 54, Civil L.R. 7-9 and 54-5, this Court's Orders on Summary Judgment (ECF No. 202) and Remedies (ECF No. 211); the Supreme Court's decision in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); the other caselaw cited herein; and is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declarations of Christopher L. Wanger, Jason Gottlieb and Min Kim; all pleadings and papers on file in these actions; and upon such other matters as may be presented to the Court at or before the time of hearing.

1  Dated: January 22, 2025          MANATT, PHELPS & PHILLIPS, LLP

2                                   By: /s/ Christopher L. Wanger

3                                       Christopher L. Wanger
                                         Misa K. Eiritz

4                                   Jason Gottlieb *Admitted pro hac vice*

5                                   Michael Mix *Admitted pro hac vice*
                                     MORRISON COHEN, LLP

6                                   *Attorneys for Defendant and Counterclaimant, ICON*
                                     *Foundation*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
San Francisco

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................ 3

    A.      ICON Reports Shins' Exploit to the FBI and Assists in the Seizure of Bug-Generated ICX and Assets Traced Thereto ........................................................ 3

    B.      ICON Obtains the Appointment of a Receiver to Oversee the Seized Assets and to Prevent Their Dissipation by Shin. ............................................................. 5

    C.      ICON Secures Summary Judgment and Legal Confirmation that the Bug-Generated ICX Are Not Shin's Property. ............................................................... 7

III.    LEGAL ARGUMENT ......................................................................................... 9

    A.      ICON is Entitled to An Award of Attorney's Fees and Costs From the Seized Assets Under the Common Fund / Substantial Benefit Doctrine. ................. 9

    B.      An Award of Fees In An Amount Equal To 30% of the Seized Assets Is Appropriate. ...................................................................................................... 11

    C.      An Award of 30% Is Comparable to the Amount of Fees Awardable Under the Lodestar Method. ....................................................................................... 14

    D.      The Foundation Should Be Granted Leave to File a Motion For Reconsideration of the Court's Order Declining to Require the Receiver to Conver the Seized Assets Into Their Original ICX Form Prior Destruction. ....... 17

IV.     CONCLUSION .................................................................................................. 20

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

# TABLE OF AUTHORITIES

**Page**

## CASES

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .......................................................................................................... 9

*Carlin v. DairyAmerica, Inc.*,
   380 F.Supp.3d 998 (E.D. Cal. 2019) .............................................................................. 10

*Dowd v. City of L.A.*,
   28 F.Supp.3d 1019 (C.D. Cal. 2014) ............................................................................... 14

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
   307 F.3d 997 (9th Cir. 2002) ............................................................................................ 9

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 1687829 ............................................................................................................ 12

*In re Activision Sec. Litig.*,
   723 F.Supp. 1373 (N.D. Cal. 1989) ................................................................................ 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...................................................................................... 11, 12

*In re Hill*,
   775 F.2d 1037 (9th Cir. 1985) ........................................................................................... 9

*In re Hyundai and Kia Fuel Economy Litigation*,
   926 F.3d 539 (9th Cir 2019) ............................................................................................. 11

*In re Netflix Priv. Litig.*,
   No. 5:11-cv-00379-EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................ 12

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d at 379 ................................................................................................................... 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ............................................................................................ 11

*Indep. Living Ctr. of S. California, Inc. v. Kent*,
   909 F.3d 272 (9th Cir. 2018) .............................................................................................. 9

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) ............................................................................................ 4

*Love v. Mail on Sun.*,
   2007 WL 2709975 (C.D. Cal. Sept. 7, 2007) *aff'd sub nom. Love v. Assoc.
   Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010) ............................................................. 15

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) .......................................................................................................... 10

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Morales v. Stevco, Inc.,*
No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058 (E.D. Cal. Mar. 25, 2013) ..................... 12

*Morris v. Lifescan, Inc.,*
54 F. App'x 663 (9th Cir. 2003) .................................................................................... 12

*Mountz, Inc. v. N.E. Indus. Bolting & Torque, LLC,*
2017 WL 780585 (N.D. Cal. Jan. 27, 2017) ................................................................. 15

*Pokorny v. Quixtar, Inc.,*
No. C-07-0201-SC, 2013 WL 3790896 (N.D. Cal. July 18, 2013) ....................................... 12

*Reiser v. Del Monte Props. Co.,*
605 F.2d 1135 (9th Cir. 1979) ........................................................................................ 9

*Santamarina v. Sears, Roebuck & Co.,*
466 F.3d 570 (7th Cir. 2006) ...................................................................................... 17

*Schwarz v. Sec. of Health & Human Services,*
73 F.3d 895 (9th Cir. 1995) ........................................................................................ 15

*Smith v. Massachusetts,*
543 US 462 (2005) .................................................................................................... 17

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) .................................................................................. 9, 12

*Torrisi v. Tucson Elec. Power Co.,*
8 F.3d 1370 (9th Cir. 1993) ...................................................................................... 14

*TPCO U.S. Holding, LLC v. Fussell,*
No. 23-CV-01324-EMC, 2023 WL 5111986 (N.D. Cal. Aug. 9, 2023) ............................... 15

*Tracy Anderson Mind & Body, LLC, et al. v. Megan Roup, et al.,*
2023 WL 6890744 (C.D. Cal. Sep. 11, 2023) ............................................................ 15

*Tutor–Saliba Corp. v. City of Hailey,*
452 F.3d 1055 (9th Cir. 2006) .................................................................................... 14

*Vasquez v. Coast Valley Roofing, Inc.,*
266 F.R.D. 482 (E.D. Cal. 2010) ............................................................................... 12

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043 (9th Cir. 2002) ......................................................................... 11, 12, 13

*Wininger v. SI Mgmt. L.P.*
301 F.3d 1115 (9th Cir. 2002) .................................................................................... 10

**STATUTES**

Civil L.R. 54-4(b)(1) ...................................................................................................... 2

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

**TABLE OF AUTHORITIES**
(continued)

**Page**

Civil L.R. 54-4(b)(2) ............................................................................................................ 14

**RULES**

Rule 26 .................................................................................................................................. 5

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

1    **I.    INTRODUCTION**

2          This case arose from Mark Shin's discovery of a bug in the software that runs the ICON

3    Network, a decentralized cryptocurrency network. Rather than simply do the right thing and alert

4    Network users of the malfunction, Shin sought to capitalize on his discovery. Over the course of an

5    11-hour attack on the Network, Shin exploited the bug 557 times and, in the process, caused the

6    Network to deliver to him almost 14 million bug-generated ICX cryptocurrency tokens. Shin's

7    exploit increased the total supply of ICX by 2.5% and posed an existential threat to the Network

8    and risked harm to the value of ICX tokens held by thousands of people.

9          Shin did everything he could to benefit from his exploit and, in the process, inflicted

10   additional harm on ICX holders. Specifically, on the same day of his exploit, Shin sold millions of

11   the bug-generated ICX for other cryptocurrencies and transferred millions more to his friends and

12   family who also sold the bug-generated ICX for other cryptocurrencies. In total, Shin and his

13   transferees sold more than 5.3 million bug-generated ICX.  In the wake of this massive sell-off, the

14   price of ICX plummeted.

15         Shin and his transferees apparently expected that no one would attempt to remedy their

16   actions because of the difficulties in doing so, including difficulties caused by the legal uncertainty

17   surrounding the ownership of erroneously generated cryptocurrency, the decentralized nature of the

18   ICON Network and the anonymity of Network users. Against this backdrop, ICON, the party that

19   founded the Network, stepped in and assumed responsibility for preventing Shin from profiting

20   from his misdeeds and redressing the harm he caused. ICON retained experienced counsel, reported

21   Shin through counsel to law enforcement, cooperated with the FBI in its seizure of most of the bug-

22   generated ICX and crypto assets traced thereto, cooperated with prosecutors in a parallel criminal

23   proceeding against Shin and successfully secured the majority of assets traceable to Shin's exploit

24   in this and a related Colorado action. Ultimately, ICON prevailed in this action on unjust

25   enrichment claims against Shin on behalf of all ICX holders and secured the return of the majority

26   of the bug-generated ICX and other assets that Shin and his transferees acquired with them. As a

27   result of ICON's substantial effort and expenditures, the Receiver in this action is holding crypto

28   assets traced to Shin's exploit worth more than $16 million.

In addition to this sizeable monetary recovery, ICON also secured an important precedent for the cryptocurrency industry. Through this action, ICON obtained judicial confirmation that, notwithstanding its new and novel nature, the world of digital finance is not the wild west, computer code is not law, and basic legal and equitable principles apply to cryptocurrency and the decentralized networks on which they reside. This action confirmed that representatives of decentralized networks can pursue and obtain recovery from network exploiters. In short, ICON enforced an important right affecting the public interest by securing a judicial pronouncement that the exploitation of crypto networks can be remedied by the courts.

Because the recovery and rulings in this matter benefitted all ICX holders and the cryptocurrency industry generally and because ICON alone was responsible for securing the recovery and rulings, it should receive an award of attorney's fees and costs from the funds it recovered. ICON requests an award equal to the greater of (1) 30% of the value of all Seized Assets transferred by the FBI to the Receiver upon their liquidation by the Receiver[1] (which, based on recent valuations, would be an award of $4,827,154); or (2) $3,471,594 under the lodestar approach.

Also, to ensure that all harm caused by Shin and his transferees is remedied, including the price-reducing effect of their sales of 5.3 million bug-generated ICX, the Court should grant ICON leave to seek partial reconsideration of the Court's Order on Remedies (ECF No. 211) to require the Receiver to convert (*i.e.*, sell) all of the non-ICX cryptocurrencies in her possession back into their original ICX form prior to destruction. ICON respectfully submits such leave is necessary to ensure that all harm suffered by ICX holders from Shin's exploit is remedied.[2]

---

[1] Because the Seized Assets are comprised of highly volatile cryptocurrencies, their value can fluctuate substantially. For example, since the Presidential election in November 2024, the value of the Seized Assets has increased by more than $2 million. To protect against a potential material decline in value of the Seized Assets between now and the time of their liquidation, ICON alternatively seeks an award of not less than the lodestar amount of its fees and costs.

[2] As required by Civil L.R. 54-4(b)(1), ICON's counsel met and conferred with Shin's counsel without success to attempt resolve disputes about this motion. See accompanying Declaration of Christopher Wanger ("Wanger Decl."), ¶ 32.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. ICON Reports Shins' Exploit to the FBI and Assists in the Seizure of Bug-Generated ICX and Assets Traced Thereto.

The factual background in this matter is more fully set out in ICON's Motion for Summary Judgment. (ECF No. 172.) In short, since Shin waged his attack on the ICON Network on August 22, 2020, ICON has taken the lead on behalf of all ICX holders to limit the harm caused by Shin's exploit and to remedy its effects. ICON initially attempted to persuade Shin to voluntarily return the approximately 14 million ICX tokens he received through his exploit by offering payment of a $200,000 bug bounty to Shin in exchange for his return of the bug-generated tokens. (*See* Kim Decl. (ECF No. 174) at ¶ 88.) After Shin declined that offer and confirmed he had no intention of returning the bug-generated ICX, ICON reported Shin's exploit to federal authorities through counsel and subsequently cooperated with their investigation of Shin. (*Id*. at ¶ 89.)

The FBI used information provided by ICON, including the addresses of the wallets Shin used in his exploit, to execute a dozen seizure warrants on several cryptocurrency exchanges where Shin and his transferees were secreting their ill-gotten gains. As a result of ICON's assistance, between December 1, 2020 and April 15, 2021, the FBI seized bug-generated ICX traceable to Shin's exploit and other assets that Shin and his transferees purchased with the bug-generated ICX (the "Seized Assets"). (*See* Wall Affidavit (ECF No.173-6) at ¶¶ 1-11 and 25-27; Shin's Interrogatory Response No. 1 (ECF No. 173-5) at pp 4:11-7:17; and Shin Depo Tr. (ECF No. 173-1) at p. 250:1-251:6.) No one has ever successfully disputed that all of the Seized Assets consist of either (1) bug-generated ICX from Shin's exploit; or (2) other crypto assets purchased by Shin and his transferees with bug-generated ICX traced to Shin's exploit.[3] The Seized Assets are currently worth more than $16 million as set forth more fully below. Due in principal part to ICON's litigation activities, the FBI has transferred the Seized Assets to the Receiver appointed at ICON's request and preserved them for the benefit of ICX holders.

---

[3] In the more than three years since the FBI's seizure of assets it traced to Shin's exploit, neither Shin nor his transferees produced any evidence in this or the Colorado forfeiture action (discussed below) that the Seized Assets consist of anything other than assets traced to Shin's exploit.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

At all times after Shin's exploit, ICON asserted both that the bug-generated ICX Shin received and the assets that he and his transferees acquired therewith were not their property and that Shin and his transferees had been unjustly enriched by Shin's exploit. ICON did so at considerable risk to itself as evidenced both by the claims asserted by Shin against ICON in this action and the future malicious prosecution claim Shin has stated he intends to bring against ICON discussed below. Ultimately, in order to undo the harm Shin caused, ICON sought and obtained a judgment in this action vindicating its principled stand. For his part, Shin retained fifteen lawyers at five different law firms who contended in this and related proceedings in Colorado that Shin owned the bug-generated ICX and assets traced thereto.[4] As a result, ICON was forced to incur substantial effort and expense to secure the return of Shin's ill-gotten gains.

Shin filed multiple complaints in which he asserted novel claims against ICON, including claims for defamation, *prima facie* tort, punitive damages and declaratory relief. As a result, ICON was required to file three separate motions to dismiss and an anti-SLAPP motion in order to dispose of Shin's claims as early as possible. ICON also prepared and filed a detailed 25-page cross-complaint asserting claims for unjust enrichment and seeking to recover all proceeds from Shin's exploit for the benefit of ICX holders at the time of Shin's exploit. (*See* ICON's First Amended Counterclaim (ECF No. 100) at ¶ 5 and pp. 24-25.) Ultimately, this case implicated two important public rights: the public interest in ensuring that property is obtained through legitimate means[5] and preventing crypto exploiters, like Shin and his transferees, from taking advantage of their own wrongs.

ICON engaged in substantial discovery, including serving multiple sets of interrogatories and document requests to advance the claims of ICX holders. (Wanger Decl., ¶¶ 9, 23(a)-(p).) ICON

---

[4] In this action, Shin has been represented by the firms of Freedman Norman Friedland LLP (attorneys Kyle Roche, Daniel Stone, Edward Norman, Peter Bach-y-Rita, Katherine Ann Eskovitz and Ivy T. Ngo), Morrison & Foerster LLP (attorneys Michael Burshteyn and Joseph Alexander Lawrence), The Crypto Lawyers (attorney Rafael Yakobi) and Turner & Associates, P.A. (attorneys Clyde Turner, Emilio Cazares and Cassie Halloway). In the Colorado actions, Shin was represented by Haddon, Morgan and Foreman, P.C. (attorneys Jeff Pagliuca, Dru Nielsen, and Kelly Kathleen Schulten).

[5] See Order (ECF No. 202) at p. 8:27-8 (*citing Kremen v. Cohen*, 337 F.3d 1024, 2030 (9th Cir. 2003)).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

responded to Shin's discovery requests, including interrogatories, requests for admission and document requests. (*Id*. at ¶ 9) ICON took the depositions of four lay witnesses and defended depositions of itself and Min Kim. (*Id*.) ICON also engaged in, and responded to, substantial expert discovery. ICON retained three experts all of whom issued Rule 26 reports, including (1) a property law expert who specializes in digital assets and cryptocurrency; (2) a technical expert who specializes in the operations of blockchain networks and the customs practices in the cryptocurrency industry; and (3) an economist who specializes in the economics of cryptocurrencies. (*Id*. at ¶ 10.) Two of ICON's experts issued rebuttal reports in response to reports issued by experts retained by Shin. ICON deposed both of Shin's experts. (*Id*.)

ICON also made every effort to resolve the case without judicial intervention, including by participating in two separate private mediations with Shin, the first in January 2022 and a second in November 2023. (*Id.* at ¶ 14.) Shin rejected numerous good faith settlement offers from ICON. (*Id*.)

ICON's efforts were not limited to this action but extended to parallel criminal and asset forfeiture proceedings in Colorado. (*Id.* at ¶ 15.) In response to the reports of Shin's exploit to law enforcement, the District Attorney for Arapahoe County, Colorado[6] (the "DA") elected to prosecute Shin on three separate counts, including cybercrime for theft over $1 million, theft for over $1 million and money laundering in the District Court, Arapahoe County, Colorado (Case No. 2021CR1445) (the "Colorado Criminal Action"). The DA also initiated an asset forfeiture action relating to the Seized Assets in the same court (Case No. 2021CV031394) (the "Colorado Asset Forfeiture Action"). In February 2022, the parties stipulated to an order staying this action pending resolution of the Colorado Criminal Action. (*See* Order at ECF No. 106.)

**B.    ICON Obtains the Appointment of a Receiver to Oversee the Seized Assets and to Prevent Their Dissipation by Shin.**

In the interim, to ensure that the Seized Assets were not returned to Shin or his transferees or otherwise dissipated, including in the event that the criminal prosecution of Shin was

---

[6] Shin resides in Aurora, Colorado, which is within Arapahoe County.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

1    unsuccessful, ICON obtained over Shin's repeated oppositions an order appointing a receiver to

2    take possession of the Seized Assets from the FBI. (*See* Order appointing Receiver (ECF No. 129).)

3    In that order, this Court concluded that "[t]he interests that the ICON Foundation seeks to protect

4    will also be well-served by appointing a receiver, which would ensure that the seized assets cannot

5    be concealed or otherwise moved as this case is decided." (*Id*. at p. 6:18–20.) The Court entered a

6    subsequent Modified Order on July 18, 2023, providing that, should the Seized Assets ever be

7    released by the Colorado Court, they must be released to the Receiver and prohibiting Shin and his

8    attorneys from interfering with the Receiver's custody of the Assets. (ECF No. 130.) Shin

9    repeatedly sought to vacate the Receiver's appointment. (*See e.g*., Order declining to reconsider

10   appointment (ECF No. 160) at p. 2.)

11       The Colorado Criminal Action was tried in May 2023. Min Kim of ICON testified in the

12   trial along with others who supported ICON and had detailed knowledge of the Network. (*See*

13   accompanying Declaration of Min Kim ("Kim Decl."), ¶ 10.) Shin's lawyers persuaded the judge

14   to exclude substantial testimony regarding cryptocurrency generally and specifically the operation

15   of the ICON Network on the grounds that (1) it called for expert testimony; and (2) the State had

16   failed to qualify its intended witnesses, including Mr. Kim and others, as experts on the subjects.

17   (Wanger Decl., ¶ 17; Kim Decl., ¶ 11.) As a result, the jury failed to hear: (1) how the Network is

18   governed and operates on a technical level; (2) how and why the Network generates and delivers

19   new ICX to users solely as a reward for staking; and (3) other key evidence establishing that the

20   bug-generated ICX was not Shin's property. In the process, the DA was precluded from presenting

21   evidence relevant to the elements of the charged crimes.  (Wanger Decl., ¶ 17; Kim Decl., ¶ 11.)

22       In the face of an incomplete evidentiary record, the jury ultimately hung on all three counts.

23   The DA notified the Colorado Court of its intent to retry Shin. (Wanger Decl., ¶ 18.)  Shin's criminal

24   counsel and the DA subsequently engaged in settlement discussions and reached a tentative

25   agreement, subject to ICON's approval, to resolve the claims. Because ICON believed the

26   settlement failed to adequately remedy the harm to ICX holders and rewarded Shin for his exploit,

27   ICON declined to support the settlement. (Wanger Decl., ¶ 19; Kim Decl., ¶ 12.) In the absence of

28

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
San Francisco

6

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

1    ICON's support, the DA declined to move forward with the settlement. Instead, the DA elected to

2    dismiss the Colorado Criminal Action to allow ICON to pursue its claims in this action and for this

3    Court to resolve the appropriate disposition of the Seized Assets. (Wanger Decl., ¶ 19.)

**C.    ICON Secures Summary Judgment and Legal Confirmation that the Bug-Generated ICX Are Not Shin's Property.**

6        After the Colorado Criminal Action was dismissed, Shin's Colorado counsel filed a motion

7    in the Colorado Asset Forfeiture Action to enforce a $250,000 attorney's fee lien against Shin and

8    to have the lien satisfied from the Seized Assets, which motion Shin supported. (*Id.* at ¶ 20.) Shin's

9    lawyers contended that the Seized Assets were Shin's property. That motion violated this Court's

10   order which expressly prohibited Shin and his counsel from interfering with the Receiver's custody

11   or receipt of the Seized Assets. (*See* ECF No. 133 at ¶ 6.) To prevent the wrongful dissipation of

12   the Seized Assets, ICON was required to (1) retain local counsel in Colorado; and (2) file a motion

13   seeking leave to intervene in the Colorado Asset Forfeiture Action and provide the Colorado Court

14   with copies of this Court's receivership orders; and (3) oppose any distribution from the Seized

15   Assets to Shin's lawyers. (Wanger Decl., ¶ 21.) After reviewing ICON's intervention request, the

16   Colorado Court declined to award Shin's attorney's any fees from the Seized Assets and dismissed

17   the Colorado Asset Forfeiture Action. As a result, ICON was able to prevent the dissipation of at

18   least $250,000 of the Seized Assets and a potential precedential ruling that the Seized Assets were

19   Shin's property. (*Id.*)

20       Despite Shin's multiple attempts to prevent it, ICON ultimately secured the transfer of all

21   of the Seized Assets by the FBI to the Receiver on June 24, 2024.  Below is a chart reflecting the

22   Seized Assets held by the Receiver and their approximate value as of January 22, 2054.[7]

23   ///

24   ///

25   ///

26   ///

27

28

[7] As noted above, the prices of these cryptocurrency assets are highly volatile and subject to material changes.

**Assets Traced to the Bug-Generated ICX That Were Seized By The FBI from Shin and His Transferees and Are Now Held by the Trustee**

| Asset | Amount | Exchange Rate to U.S. Dollar as of 1/22/25 (approximately 2:00 pm PST) (coinmarketcap.com) | Value in U.S. Dollars |
|---|---|---|---|
| ADA (Cardano) | 105,859.78 | $0.99 | $104,800.41 |
| BNB | 179.8858771 | $698 | $125,559.73 |
| BTC (Bitcoin) | 47.74845944 | $104,078 | $4,969,557.98 |
| ETH (Ethereum) | 2,693.38712855 | $3,257 | $8,772,361.46 |
| ICX | 1,890,353.88 | $0.17 | $321,360.16 |
| LINK (Chainlink) | 4,153.39 | $25.46 | $105,745.31 |
| REN | 100,000.00 | $0.028 | $2,800 |
| REP (Augur) | 12.91203132 | $0.57 | $7.36 |
| USD ($) | 256,061.29 | $1.0 | $256,061.29 |
| USDT (Tether) | 138,495.94967 | $1.0 | $138,495.95 |
| XRP | 120,726.75 | $3.17 | $382,703.80 |
| XTZ (Tezos) | 4,805.152127 | $1.18 | $5,670.08 |
| LTO (LTO Network) | 48,994.34 | $0.11 | $5,389.38 |
| | | **Total** | **$16,090,512** |

(Wanger Decl. at ¶ 22.)

While ICON's counsel was securing the Seized Assets in this matter, Shin was unsuccessfully seeking to extend the case schedule and prolong this long-running case. (*See e.g.*, Order (ECF No. 160) at pp. 3-4.) Ultimately, based on ICON's extensive work up of the case, ICON was able to resolve the matter efficiently by prevailing on a well-supported summary judgment motion and defeating Shin's cross-motion. The court ruled that Shin did not obtain the bug-generated ICX via legitimate means. (*See* Summary Judgment Order (ECF No. 202) at pp. 1:12-24 and 9:1-6.) Instead, Shin obtained those tokens through his willful exploit of a known flaw in the Network. The Court concluded that because he did not obtain the bug-generated ICX by legitimate means, those tokens are not his property. (*Id.*) The Court concluded that Shin had been unjustly enriched because "he exploited, received, and knowingly retained a benefit that was conferred to him via his willful decision to manipulate what he understood to be a flaw in the Network." (*Id.* at p. 18:3-6.) Under the circumstances, "It would be inequitable to allow him to retain any benefit from that conduct." (*Id.* at p. 18:11-12.) In its subsequent Order on Remedies, the Court held that ICON could seek an award of fees and costs from the Seized Assets and that the balance of the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Seized Assets should be destroyed. (Order (ECF No. 211) at pp. 4-5.)

2    **III.    LEGAL ARGUMENT**

3        A.    <u>**ICON is Entitled to An Award of Attorney's Fees and Costs From the Seized**</u>
         <u>**Assets Under the Common Fund / Substantial Benefit Doctrine.**</u>

4

5            Under the exercise of its equitable power, a federal court may award attorney's fees to

6    successful litigants who confer a common benefit upon a class of individuals not participating in

7    the litigation (the so-called "Common Fund" or "Substantial Benefit" doctrine). *Boeing Co. v. Van*

8    *Gemert*, 444 U.S. 472, 478-479 (1980); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003);

9    *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). The

10   doctrine is an exception to the American Rule that litigants bear their own attorney's fees. "[A]

11   litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or

12   his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing,* 444 U.S. at

13   478. This exception works to prevent "persons who obtain the benefit of a lawsuit without

14   contributing to its cost [from being] unjustly enriched at the successful litigant's expense . . . by

15   assessing attorney's fees against the entire fund, [and] thus spreading fees proportionately among

16   those benefited by the suit." *Id.*

17           "The form of suit is not a deciding factor; rather, the question to be determined is whether

18   a plaintiff, in bringing a suit either individually or representatively, has conferred a benefit on

19   others." *Reiser v. Del Monte Props. Co.*, 605 F.2d 1135, 1140 (9th Cir. 1979). An award of fees

20   under the common fund doctrine is appropriate where, among other things, "(1) the class of

21   beneficiaries [was] sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the

22   fee can be shifted with some exactitude to those benefiting." *Indep. Living Ctr. of S. California,*

23   *Inc. v. Kent*, 909 F.3d 272, 285 (9th Cir. 2018) (quoting *In re Hill*, 775 F.2d 1037, 1041 (9th Cir.

24   1985). A monetary recovery is not a prerequisite under the doctrine. A fee award may be

25   appropriate where the litigation confers a "substantial nonpecuniary benefit" on the members of an

26   ascertainable class through injunctive or declaratory relief and the court's jurisdiction over the

27   subject matter of the suit makes possible an award that will operate to spread the costs

28

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
San Francisco

9

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

proportionately among them. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970). The court has broad discretion in awarding fees and may award fees for work done on related issues that were never litigated but assisted counsel in obtaining the result. *Wininger v. SI Mgmt. L.P.* 301 F.3d 1115, 1120-1121 (9th Cir. 2002).

Reasonable litigation costs also are recoverable under a common fund theory of recovery. *See, e.g., Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1023-24 (E.D. Cal. 2019) ("An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund. The award "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary" and "can include reimbursements for: (1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees. The standard of reasonableness of costs is to be given a liberal interpretation.") (collecting Ninth Circuit authority).

Here, each element for an award of fees and costs under the common fund theory is met. First, ICON's suit conferred a benefit on the holders of ICX specifically and more generally on all holders of cryptocurrency. ICON recovered from Shin and his transferees more than $16 million in bug-generated ICX and other cryptocurrency traceable to Shin's exploit that did not belong to them. As a result, ICON was able to remedy much of the harm suffered by holders of ICX from Shin's exploit. In addition to the sizeable monetary recovery obtained by ICON for ICX holders, ICON also secured an important precedent for ICX and other cryptocurrency holders. The judgment in this action will confirm for the world that cryptocurrency exploits can be remedied by the courts, the effect of which should be to instill greater trust in the ICON Network and other cryptocurrency networks generally.

The beneficiaries of this action are sufficiently identifiable. All persons who owned ICX at the time of Shin's exploit and who retain those tokens today benefitted from the judgment in this action. Shin's exploit increased the existing ICX supply by 2.5% and the price of ICX fell

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

1    significantly in the wake of the exploit. The Court's judgment in this action remedies much of that

2    harm. On August 22, 2020 (the date of Shin's exploit), there were approximately 42,507 unique

3    wallets that held at least 0.1 ICX. (Kim Decl., ¶ 16.) Assuming, each wallet was held by a different

4    person, then that same number of people were affected by Shin's exploit.

5          The benefits of ICON's suit, both pecuniary and non-pecuniary, can be accurately traced.

6    There is no dispute that the FBI traced all of the Seized Assets to Shin's exploit – the Seized Assets

7    consist entirely of bug-generated ICX or assets that Shin or his transferees acquired with the bug-

8    generated ICX. The value of those assets currently exceeds $16 million. And while those assets

9    will not be returned directly to ICX holders and instead will largely be destroyed, such destruction

10   provides a direct benefit to ICX holders because it undoes the harm of Shin's exploit and restores

11   trust in the Network.[8]

12         Finally, the fee award can be shifted to beneficiaries with exactitude. The fee award will be

13   deducted before the destruction of the Seized Assets, resulting in each beneficiary simultaneously

14   bearing both a proportional share of the total fee and a proportional benefit.

### B.    An Award of Fees In An Amount Equal To 30% of the Seized Assets Is Appropriate.

17         District courts presiding over common fund cases have the discretion to award attorney's

18   fees based on either (1) a percentage-of-recovery basis, in which the court awards fees as a

19   percentage of the overall fund recovered; or (2) a lodestar basis. *In re Bluetooth Headset Prods.*

20   *Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (courts have discretion to choose either method as a

21   primary basis for calculation, provided they exercise their discretion "so as to achieve a reasonable

22   result"); *In re Hyundai and Kia Fuel Economy Litigation,* 926 F.3d 539, 570 (9th Cir 2019); *In re*

23   *Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) ("either the

24   percentage or the lodestar method may be appropriate depending on the circumstances"). There is

25   no presumption in favor of either approach, but the percentage method has been described as the

26   "dominant" approach in common fund cases. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

---

[8] As discussed in Section D below, that portion of the Seized Assets that will be destroyed should first be converted back into ICX before being destroyed to fully undo the harm of Shin's exploit.

Manatt, Phelps & Phillips, LLP
Attorneys at Law
San Francisco

11

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

1    1047 (9th Cir. 2002).

2    Courts in the Ninth Circuit typically grant attorney's fees constituting approximately

3    between 20% to 35% of the common fund, with 25% being presumptively reasonable. *See Staton*,

4    327 F.3d at 968; *In re Bluetooth*, 654 F.3d at 942; *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D.

5    482, 491 (E.D. Cal. 2010) (noting "[t]he typical range of acceptable attorneys' fees . . . is 20% to

6    33 1/3% of the total settlement value, with 25% considered the benchmark"); *In re Pacific Enters.*

7    *Sec. Litig.*, 47 F.3d at 379 (33% of fund); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL

8    1687829, at *1 (30% of the fund within the "usual range" of fee awards); *In re Activision Sec. Litig.*,

9    723 F.Supp. 1373, 1375 (N.D. Cal. 1989) (32.8% fee). In determining the value of the recovery,

10   courts consider both the monetary and non-monetary benefits conferred by counsel's work. *Id. at*

11   972–74 (9th Cir. 2003); *Pokorny v. Quixtar, Inc.*, No. C-07-0201-SC, 2013 WL 3790896, at *1

12   (N.D. Cal. July 18, 2013) (court may properly consider the value of injunctive relief obtained); *In*

13   *re Netflix Priv. Litig.*, No. 5:11-cv-00379-EJD, 2013 WL 1120801, at *7 (N.D. Cal. Mar. 18, 2013)

14   (recovery value includes injunctive relief). The benchmark is not rigid – it leaves room for the

15   consideration the circumstances of the case. *Vizcaino*, 290 F.3d at 1047-50. Relevant factors

16   include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the

17   professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, No.

18   CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan*,

19   *Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Pac. Enters.*, 47 F.3d at 379

20   (same).

21   Here, ICON seeks an award equal to the greater of (1) 30% of the Seized Assets upon their

22   liquidation (which based on recent valuations translates to $4,827,154); or (2) $3,471,594,

23   representing the fees and costs incurred under the lodestar approach. Such an award is appropriate

24   under the circumstances of the case. First, ICON achieved a complete victory, which included a

25   judicial determination that the bug-generated ICX are not Shin's property. ICON also was

26   responsible for securing the Seized Assets and ensuring that they were not returned to Shin and his

27   transferees, where they would have been paid to his lawyers and otherwise dissipated. The ultimate

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

1    remedy in this action also will ensure that the harm caused by Shin and his transferees will be

2    undone to the greatest extent possible.

3        ICON also took on substantial risk in pursuing recovery from Shin, which continues to this

4    day.  Shin claimed that ICON's privileged actions in trying to remedy the harm he caused, including

5    alerting the exchanges to his exploit and seeking the return of the bug-generated ICX, constituted

6    a trespass to or conversion of his property entitling him to millions of dollars from ICON. Under

7    the circumstances, most in ICON's position would have either let Shin get away with his exploit or

8    compromised the representative claim against him by allowing Shin to retain some or all of the

9    proceeds to eliminate any potential liability to ICON. But ICON did neither and instead asserted

10   and prevailed on its claims thereby establishing an important precedent that the bug-generated ICX

11   were not his property.

12       Moreover, the risks undertaken by ICON in remedying Shin's actions are ongoing. **Shin's**

13   **counsel disclosed both in the meet and confer process for this motion and his recent**

14   **bankruptcy filing that Shin intends to pursue a malicious prosecution action against ICON**

15   **in Colorado based on ICON's privileged and truthful reporting of Shin's exploit to law**

16   **enforcement.**[9] (Wanger Decl., ¶ 32.) Although frivolous, Shin's claim will require ICON to incur

17   additional fees and costs to dispose of the claim. Under the circumstances, ICON should receive a

18   substantial reward in this action for the risks it assumed in taking a principled stand on behalf of all

19   ICX holders.

20       The length and breadth of ICON's counsel involvement also supports the requested award.

21   The case spanned more than four years and ICON was required to fight Shin and his many lawyers

22   in multiple venues to ensure that all of the Seized Assets were secured. Finally, such an award is

23   appropriate under the particular circumstances of this case. Because all of the Seized Assets that

24   are not awarded to ICON for its fees will be destroyed, there is no good reason not to award to

25   ICON 30% of the Seized Assets.

26

27   ─────────────────────

28   [9] Shin listed the purported malicious prosecution claim in his bankruptcy schedules as one of his
     "assets".

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
San Francisco

13

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

**C.    An Award of 30% Is Comparable to the Amount of Fees Awardable Under the Lodestar Method.**

If the court applies the percentage method, it then typically calculates the lodestar as a "cross-check" to assess the reasonableness of the percentage award. *Vizcaino*, 290 F.3d at 1050. Under the lodestar method of calculating an attorney's fee award, the  court multiplies "the number of hours reasonably expended by a reasonable hourly rate." *Tutor–Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1064 (9th Cir. 2006). The fee award does not need to be equally justifiable under both the lodestar and the percentage methods, and the court can base its award on the percentage method, even if it exceeds the lodestar amount.  *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376–77 (9th Cir. 1993) (upholding as reasonable a percentage fee award of $8 million, although lodestar amount came to only $3 million). As discussed below, a lodestar analysis confirms the reasonableness of the attorney's fees calculated using the percentage method.

As set forth in more detail in the accompanying Wanger Decl. and the Declaration of Jason Gottlieb ("Gottlieb Decl."), between August 2020 and November 2024, ICON's attorneys spent a total of 3,442.50 hours and ICON incurred total fees of just over $3.1 million.[10] The following table provides a general breakdown of the fees. ICON will incur a minimum additional amount of more than $25,000 in fees in connection with this motion. (Wanger Decl., ¶ 26.)

| Firm | Hours | Range of Rates | Total Fees |
|---|---|---|---|
| Manatt, Phelps & Phillips, LLP | 2,679.4 | $450-$1,400 | $2,657,253.50 |
| Morrison Cohen, LLP | 697.5 | $200-$1,200 | $455,206.50 |
| Holland & Hart | 65.6 | $310-$525 | $27,202.00 |
| Total | 3,442.50 | | $3,139,662 |

(*Id.* at ¶¶ 21, 24-26, Ex. M-N; Gottlieb Decl., ¶ 13.)

ICON's counsel's rates described above and in the accompanying declarations are

---

[10] Pursuant to Civil L.R. 54-4(b)(2), ICON will submit the voluminous invoices reflecting its attorneys' work and contemporaneous time records in this matter upon the Court's request.

1    reasonable given the prevailing market rate for legal services and other factors specific to this

2    litigation.  "The 'prevailing market rates in the relevant community' set the reasonable hourly rate

3    for purposes of computing the lodestar amount." *Dowd v. City of L.A.*, 28 F.Supp.3d 1019, 1051

4    (C.D. Cal. 2014).  The court "should be guided by the rate prevailing in the community for similar

5    work performed by attorneys of comparable skill, experience, and reputation."  *Schwarz v. Sec. of*

6    *Health & Human Services*, 73 F.3d 895, 908 (9th Cir. 1995).  "The relevant community for purposes

7    of determining the prevailing market rate is generally the forum in which the district court sits."

8    *TPCO U.S. Holding, LLC v. Fussell*, No. 23-CV-01324-EMC, 2023 WL 5111986, at *2 (N.D. Cal.

9    Aug. 9, 2023).

10       ICON's counsel has significant experience litigating complex cases in this district,

11    including cryptocurrency cases. ICON retained Manatt as lead counsel and was assisted by the

12    Morrison Cohen firm and Holland & Hart as local counsel in Colorado. Manatt is a national law

13    firm with more than 450 lawyers in multiple offices in the United States. As the Wanger Declaration

14    explains in greater detail, the rates charged by Manatt and ICON's other counsel are either at or

15    below the prevailing market rate in the Northern District among comparable firms.[11] Federal courts

16    across California, including this District, previously have found Manatt's rates reasonable. *See,*

17    *e.g.*, *Mountz, Inc. v. N.E. Indus. Bolting & Torque, LLC*, 2017 WL 780585, at *3 (N.D. Cal. Jan.

18    27, 2017); *Love v. Mail on Sun.*, 2007 WL 2709975, at *12 (C.D. Cal. Sept. 7, 2007) *aff'd sub nom.*

19    *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010) (awarding $518,859 in attorney's

20    fees and noting that "[t]he experience, reputation, and ability of the Manatt attorneys well-merit the

21    fees sought"); *Tracy Anderson Mind & Body, LLC, et al. v. Megan Roup, et al.*, 2023 WL 6890744,

22    at *3 (C.D. Cal. Sep. 11, 2023) ("Having considered Defendants' attorneys' experience and the

23    prevailing rates in the community for comparable work, the Court approves as reasonable

24    Defendants' attorneys' rates.").

25

26    ───────────────────

27    [11] The firms are Akin Gump Strauss Hauer & Feld LLP; Arnold & Porter Kaye Scholer LLP;
      Fenwick & West LLP; Munger Tolles & Olsen LLP; Orrick, Herrington & Sutcliffe LLP; Pillsbury

28    Winthrop Shaw Pittman LLP; and Sheppard Mullin Richter & Hampton LLP.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

The number of hours spent by ICON's counsel also was reasonable. Manatt employed highly strategic, cost-efficient litigation techniques to ensure that it only performed work that was necessary for the case and that the work performed was handled by the most appropriate attorney given their years' experience. The hours spent also are reasonable given the length of the litigation and the novelty and complexity of the issues presented. This was a four-years long litigation that posed significant challenges and difficulty. At onset, this litigation raised novel theories of property law, as this Court itself acknowledged. (*See, e.g.*, ECF No. 97 at 5 ("Moreover, given the novelty of the issues at hand . . ."); *id.* at 11 ("The availability of another remedy is particularly important in a case like this, which involves novel forms of property and related legal issues.").) The litigation was made further complex by virtue of the type of property involved—cryptocurrency—and required consulting with, deposing, and issuing reports from various experts to be able to explain to the Court and a jury how cryptocurrency and the blockchain function.

ICON also incurred substantial litigation costs as more fully set out in the Wanger and Gottlieb Declarations, which are summarized below.

| Cost Item | Amount |
|---|---|
| Expert Fees for Dr. Joshua Gans[12] | $92,768.75 |
| Expert Fees for Prof. Josh Fairfield[13] | $21,375 |
| Expert Fees for Paul Sibenik[14] | $28,712 |
| Consulting Fees to Parameta[15] | $46,759.92 |
| Costs for copying, postage, legal research, couriers, travel to Colorado and other miscellaneous items incurred by Manatt, | $105,025.20 |

[12] *See* Wanger Decl., ¶ 13, Ex. H.

[13] *See id.* at ¶ 11, Ex. F.

[14] *See id.* at ¶ 12, Ex. G.

[15] *See* Kim Decl., ¶ 14, Ex. A.

| | |
|---|---|
| Phelps & Phillips[16] | |
| Costs for copying, postage, legal research and other miscellaneous items incurred by Morrison Cohen[17] | $3,991.98 |
| Mediation Fees to JAMS for mediator Stephen Nieman[18] | $3,300 |
| Mediation Fees to Brown Rudnick for mediator Stephen Palley[19] | $5,000 |
| **Total** | $306,932.85 |

When these costs are added to the fees described above, including the minimum of $25,000 incurred on this motion,[20] the total fees and costs amount to $3,471,594 – an amount which reinforces that an award of 30% of the Seized Assets is reasonable.

### D. The Foundation Should Be Granted Leave to File a Motion For Reconsideration of the Court's Order Declining to Require the Receiver to Conver the Seized Assets Into Their Original ICX Form Prior Destruction.

A district court has the inherent power to reconsider and modify its interlocutory orders. *Smith v. Massachusetts*, 543 US 462, 475 (2005). Where a movant can show that the Court "has misunderstood the party or made [an] error of apprehension, reconsideration may be proper." *Rutter Prac. Guide Fed. Civ. Pro. Before Trial* (Calif. & 9th Cir. Ed.), ¶ 12.158 (TRG 2024) *citing Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006).

In its response to the Court's request for briefing on remedies (ECF No. 202 at pp. 18-19), the Foundation sought an order that the bug-generated ICX that Shin and his transferees converted to other cryptocurrencies first be converted back into their original ICX form and then destroyed. (*See* ECF No. 204 at p. 6:1-21.) In its subsequent Order on Remedies, the Court indicated that it

---

[16] *See* Wanger Decl., ¶¶ 24 and 26, Exs. L and N.

[17] *See* Gottlieb Decl., ¶¶ 10-12, Ex. 5.

[18] *See* Wanger Decl., ¶ 14, Ex. I.

[19] *See id.*

[20] Wanger Decl., ¶ 24-26, Exs. K-N.

1    did "not understand why any of the Seized Assets should be converted to ICX prior to destruction."

2    (ECF No. 211 at p. 5:4-8.)  The Court stated that once the Court awards ICON its attorney's fees

3    and costs, "it will be in as close a position as can be accomplished under the circumstances to where

4    it was before Shin misappropriated the tokens."  (*Id.*)  ICON respectfully submits that a judgment

5    that fails to require that the non-ICX portion of the Seized Assets be converted back into ICX fails

6    to remedy a significant aspect of the harm Shin caused, specifically the price-reducing sales by

7    Shin and his transferees of more than 5.3 million bug-generated ICX.

8         ICON brought its counterclaim to redress to the greatest extent possible all harm caused by

9    Shin's exploit on behalf of all those holding ICX tokens at the time of the exploit.  (*See* First

10   Amended Counterclaim (ECF No. 100) at pp. 2 and 24-25.)  The Main P-Reps were able to freeze

11   but not destroy approximately 6.7 million of the 13,925,557 bug-generated ICX initially held by

12   Shin in his ICONex wallets.  (Kim Decl. (ECF No. 174) ¶ 64.)  However, Shin transferred the

13   majority of the bug-generated ICX (approximately 7,225,557 bug-generated ICX) to accounts held

14   by him, his family and his friends at various cryptocurrency exchanges.

15        Specifically, Shin transferred approximately 2,150,000 bug-generated ICX to exchange

16   accounts held by his friends and family and the balance of approximately 5,075,577 bug-generated

17   ICX to his own exchange accounts.  (*See* Shin's Response to Interrogatory No. 1 (ECF No. 173-5

18   at pp. 4-8) and Shin Depo. Tr. (ECF No. 173-1 at pp. 183:3-187:24 and 240:19-243:6).)  With the

19   exception of the 1,890,353.88 bug-generated seized by the FBI and held by the Receiver, Shin and

20   his transferees sold the balance of the bug-generated ICX totaling approximately 5,335,203 ICX

21   tokens for other crypto or fiat currency in August 2020. (*See, e.g.*, Shin Brief (ECF No. 203) at p.

22   3:12-13 (claiming that "98% of the value of the Seized Assets are non-ICX assets" "purchased by

23   Shin").  It is these sales of approximately 5.3 million bug-generated ICX that ICON respectfully

24   submits the Court's Order (ECF No. 211) fails to remedy. The sheer volume of Shin's and his

25   transferee's sales of bug-generated ICX were substantial and unsurprisingly were followed by a

26   significant decline in the price of ICX.  In the two-week period between August 22 and September

27   5, 2020, when Shin's exploit became widely known within the ICON community, the price of ICX

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

1    decreased by almost 40%, from 65 cents to 40 cents.  (Kim Decl. (ECF No. 174) ¶¶ 43 and 87 and

2    Exhibit 17 thereto (ECF No. 174-17).)

3          Shin himself has previously acknowledged that it is appropriate for this Court to require the

4    Receiver to use the Seized Assets to acquire ICX to account for harm he caused.  (*See* Shin's Brief

5    (ECF No. 203) at p. 3:15-18.)  But Shin contends that the Receiver should only use the Seized

6    Assets to buy 4,801,798 ICX because the Main P-Reps locked up 6.7 million bug-generated ICX

7    in his ICONex wallets and the Receiver is holding another 1,890,353.88 in bug-generated ICX.

8    But the 6.7 million that were locked up in Shin's ICONex wallets remain part of the total supply of

9    ICX and theoretically could be unlocked. Moreover, because there is no dispute that **all** of the

10   Seized Assets were acquired with bug-generated ICX, they should **all** be converted back to ICX

11   before being destroyed.

12         Conversion of all non-ICX Seized Assets back into ICX prior to destruction also would

13   provide another critically important benefit – the verifiable and failsafe destruction of the Seized

14   Assets.  The ICON Network has a known wallet with a "burner address" where ICX tokens can be

15   sent for destruction.[21] No one has the private keys to that wallet and once an ICX token is sent to

16   the burner address, it becomes permanently inaccessible by anyone. Like transfers to all other

17   wallets, any transfer to the burner address is publicly viewable on the ICON blockchain and thus

18   the world can confirm both the number of ICX tokens sent to the burner address and that they

19   remain at that address.

20         ICON is not aware of similar burner addresses for all of the many other cryptocurrencies

21   held by the Receiver. (Kim Decl., ¶¶ 19-20.) Accordingly, destruction of the non-ICX assets held

22   by the Receiver would likely need to be accomplished through physical destruction of the tokens.

23   But ICON is not aware of any way to ensure a failsafe and verifiable physical destruction of the

24   tokens. Although the tokens may reside on a thumb drive for example, they can be copied.  Thus,

25   physical destruction of a storage device on which copies of the tokens reside is neither verifiable

26

27   [21] More than 900,000 bug-generated ICX have already been sent to the burner address and

28   destroyed in this manner. (*See* Kim Decl. (ECF No. 174) at ¶¶ 79-84 and Exs. 15 and 16 (ECF Nos. 174-15 and 174-16).)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

nor failsafe. Because there are millions of dollars' worth of Seized Assets that are subject to destruction, the Court should require conversion to ICX so that they can be destroyed in a verifiable and failsafe manner.

Shin previously has suggested that conversion of the Seized Assets back into ICX could present "market manipulation opportunities for large ICX holders." (ECF No. 203 at p. 8:20.) This claim is rich coming from Shin. When seeking to defend his exploit and his sales of millions of bug-generated ICX, Shin characterized such sales as harmless non-events with no impact on ICX holders. (*See e.g.*, ECF No. 184 at p. 20:10-13.) But when faced with a request to undo the effect of those sales, Shin cries foul. Regardless, nothing about the conversion is market manipulation or poses any harm to others. Instead, the remedy simply undoes the effect Shin's and his transferees' sales of 5.3 million bug-generated ICX for other cryptocurrencies.[22] Shin's objection to the conversion is that sales of the Seized Assets for ICX could increase the price and provide a benefit to large ICX holders. (*See* Brief (ECF No. 203) at pp. 8-9.) But that is precisely why the conversion is appropriate – it remedies in part Shin's and his transferees' sale of 5.3 million bug-generated ICX. Admittedly, there may be some current ICX holders who did not hold ICX at the time of Shin's exploit who could benefit from the conversion but that is not a reasonable basis to forego ordering the conversion. The Court's remedy should seek to do equity as much as possible even if as the Court has acknowledged, its remedy in this case must be "imperfect." (Order on Remedies (ECF No. 211) at p. 5:13-14.) Even if imperfect, requiring the Receiver to convert the proceeds of Shin's bug-generated ICX back into ICX will achieve a more equitable result for those harmed by Shin's exploit.

## IV.    CONCLUSION

The Court should award ICON fees and costs in the greater amount of (1) 30% of the value on of the cryptocurrency assets it recovered in this matter upon their liquidation by the Receiver;

---

[22] Shin previously objected because of his purported concern that ICON might participate in the conversion by selling ICX to the Receiver and thereby profit from the remedy. (ECF No. 203 at p. 9:4-7.) Shin fails to explain how such sales at market prices would result in undue profit. Regardless, ICON does not object to an Order from this Court prohibiting it and its Council persons from engaging in any sales of ICX in the period during which the Receiver is converting the Seized Assets back into ICX for destruction.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)

1  or (2) $3,471,594 representing ICON's fees and costs using the lodestar approach. The Court should

2  also grant ICON leave to seek an order requiring the Receiver, after paying ICON its  award of fees

3  and costs, to convert all remaining non-ICX tokens among the Seized Assets back into ICX prior

4  to destroying the Seized Assets.

5

6  Dated: January 22, 2025                MANATT, PHELPS & PHILLIPS, LLP

7                                         By: */s/ Christopher L. Wanger*
                                              Christopher L. Wanger
8                                             Misa K. Eiritz

9                                         Jason Gottlieb *Admitted pro hac vice*
                                          Michael Mix *Admitted pro hac vice*
10                                        MORRISON COHEN, LLP

11                                        *Attorneys for Defendant and Counterclaimant, ICON*
                                          *Foundation*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

ICON FOUNDATION'S MOTION FOR
ATTORNEYS' FEES
3:20-CV-07363 (WHO)