UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SHIN,<br><br>        Plaintiff,<br><br>    v.<br><br>ICON FOUNDATION,<br><br>        Defendant. | Case No. 20-cv-07363-WHO<br><br>**ORDER AWARDING ICON ATTORNEY FEES AND COSTS AND GRANTING REQUEST FOR RECONSIDERATION OF PART OF THE REMEDIES ORDER**<br><br>Dkt. No. 218 |

ICON Foundation ("ICON") makes an unopposed motion for attorney fees and costs and requests leave to file a motion for partial reconsideration of this court's Order on Remedies. *See* Dkt. No. 211. After granting ICON summary judgment on its unjust enrichment counterclaim, I ordered that ICON could file a motion seeking compensation from the Seized Assets for its attorney fees and costs, to which plaintiff and counterdefendant Mark Shin could respond if he wished. ICON filed its motion and Shin did not respond. ICON is entitled to attorney fees and costs pursuant to the common fund doctrine and its motion is GRANTED. Additionally, after further consideration of the Order on Remedies, I am persuaded that the proper remedy includes converting the Seized Assets back into ICX prior to their destruction.

## BACKGROUND

I granted summary judgment for ICON on its unjust enrichment counterclaim, which sought restitution after plaintiff Mark Shin exploited a bug in its software 557 times to generate 13,950,558 ICX cryptocurrency tokens in his ICONex wallet (the "bug-generated ICX"). *See* Dkt. No. 202 (Summary Judgment Order). Shin transferred millions of the bug-generated ICX to his family and friends and sold millions more for other cryptocurrencies.

While Shin's actions injured all ICX holders, it was ICON (as the founder of the ICON

Network and the largest holder of ICX) that endeavored to right Shin's wrong. When Shin's exploitation of the software bug was first revealed, ICON offered him a "bug bounty" of $200,000 if he would return the bug-generated ICX. Shin rejected its offer. *See* Declaration of Min Kim [Dkt. No. 174] ¶ 88. When its private efforts to negotiate with Shin failed, ICON cooperated with prosecutors in the Colorado state court criminal action against Shin. *Id.* ¶ 89. Using information provided by ICON, the Federal Bureau of Investigation (the "FBI") executed several seizure warrants on various cryptocurrency exchanges where Shin and his transferees were storing the assets traceable to the bug-generated ICX. Those assets were seized and are now held by a Receiver; they are estimated today to be worth around $11 million, although that number is volatile given the nature of cryptocurrency.[1]

On behalf of itself and for the benefit of other ICX holders, ICON successfully defended Shin's conversion and wrongful taking claims and prevailed on its counterclaim against Shin for unjust enrichment. *See generally* Docket, *Shin v. ICON Foundation, et al.*, Case No. 3:20-cv-07363-WHO (N.D. Cal., filed Oct. 20, 2020). To litigate this novel case, ICON used several lawyers at three different law firms, engaged in substantial discovery (including expert discovery), deposed four lay witnesses, defended its own depositions and the deposition of Min Kim, and participated in two private mediations with Shin. *See* Declaration of Christopher Wanger [Dkt. No. 218-1] ¶¶ 9-23. It obtained a court order appointing a Receiver to ensure that the Seized Assets were not destroyed, moved, or modified during the pendency of the lawsuit, *see* Order Appointing Receiver (Dkt. No. 129), and later successfully defended against Shin's attempts to vacate that appointment, *see* Order Declining to Reconsider Appointment (Dkt. No. 160).

ICON now seeks attorney fees and costs incurred in connection with this litigation. Dkt. No. 218. It requests the greater of: (1) 30% of the value of the cryptocurrency assets it recovered in this matter, the value of which would be determined upon their liquidation by the Receiver; or (2) $3,471,594, representing ICON's fees and costs using the lodestar approach. *See* Motion for Attorney Fees and Partial Reconsideration of Remedies Order ("Motion" or "Mot.") [Dkt. No.

---

[1] I refer to these assets as the "Seized Assets."

218]. It also asks that I reconsider my initial decision *not* to order that the Seized Assets be converted back into ICX prior to their court-ordered destruction.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 54(d)(2)(A) provides that a party may file a claim "for attorney's fees and related nontaxable expenses." A motion seeking attorney fees must: (1) be filed no later than 14 days after judgment is entered; (2) "specify the judgment and the statute, rule, or other grounds entitling the movant to the award;" (3) "state the amount sought or provide a fair estimate of it;" and (4) if ordered by the court, disclose the terms of any agreement about fees for the services for which the claim is made. Fed. R. Civ. P. 54(d)(2)(B)(i)-(iv).

While Rule 54(d) sets forth a procedure for recovering attorney fees, it does not establish a right to do so. *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1280 (9th Cir. 1999). "[T]here must be another source of authority for such an award." *Id*. at 1281. (internal citation omitted). This requirement of an "independent source of authority . . . gives effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute, or contract authorizing such an award." *Id*. (internal citation omitted). When a party seeks costs other than attorney fees, Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise," such costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

District courts typically employ the "lodestar method" to calculate an appropriate amount of attorney fees. *Vargas v. Berkeley Unified Sch. Dist.*, No. 16-CV-06634-WHO, 2017 WL 5991857, at *1 (N.D. Cal. Dec. 4, 2017). This calls for the court to multiply "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The party seeking attorney fees must establish its entitlement to the award and submit evidence supporting the hours worked and rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Although fee awards calculated under the lodestar method are generally presumed to be reasonable, the court may adjust this figure "if circumstances warrant . . . to account for other factors which are not subsumed within it." *Gonzalez*, 729 F.3d at 1202; *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir.

3

2001). A district court may exclude "hours that are excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434. Plaintiffs may also recover attorney fees for time "reasonably expended on a motion for attorney fees and costs." *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1008 (N.D. Cal. 2012).

## DISCUSSION

## I. ATTORNEY FEES AND COSTS

### A. The Common Fund Doctrine

ICON is entitled to attorney fees and costs under the so-called "common fund doctrine." The common fund doctrine is an exception to the "American Rule," which provides that litigants bear their own attorney fees. "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-479 (1980); *see also Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). As explained by the United States Supreme Court, the common fund doctrine exists to prevent "persons who obtain the benefit of a lawsuit without contributing to its cost [from being] unjustly enriched at the successful litigant's expense." *Boeing Co.*, 444 U.S., at 478 (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970)).

The Supreme Court has laid out the distinguishing features of a common fund case. *See id.* at 478-79. First, the class of persons benefitted by the lawsuit must be sufficiently identifiable. *See id.* Second, the benefits must be able to be accurately traced. *See id.* And finally, there must be a "reason for confidence that the costs [of litigation] could . . . be shifted with some exactitude to those benefitting." *Id.* at 479 (internal citations omitted). The Ninth Circuit has explained that "[t]he *form* of suit is not a deciding factor" in whether the common fund doctrine applies, but rather, "the question to be determined is whether a plaintiff, in bringing a suit either individually or representatively, has *conferred a benefit on others*." *Reiser v. Del Monte Props. Co.*, 605 F.2d 1135, 1140 (9th Cir. 1979) (emphasis added).

The criteria for the common fund doctrine are met here. The class of beneficiaries is identifiable as persons who owned ICX when Shin attacked the network and who still own ICX today. Those individuals saw the value of their tokens drop after Shin flooded the Network with

4

bug-generated tokens and sold millions of those tokens. They benefitted from ICON pursuing Shin, freezing his accounts and, ultimately, securing the seizure of the bug-generated ICX and many of the assets that Shin and his transferees bought with it.[2] That benefit can be traced by following the FBI's seizure of the bug-generated ICX and traceable assets; the Seized Assets now sit with the Receiver, rather than saturating the crypto market with bug-generated ICX and devaluing all ICX for all users. It is appropriate to shift the fee by deducting ICON's attorney fee and costs award from the value of the Seized Assets before they are destroyed so that each beneficiary will simultaneously bear a proportional cost and benefit of the litigation.[3]

### B. Attorney Fees for ICON

ICON proposes that it be awarded the greater of (1) 30% of the value of all Seized Assets transferred by the FBI to the Receiver upon their liquidation by the Receiver; or (2) $3,471,594 under the lodestar approach. The second model is best suited to the circumstances of this case. District courts typically employ the lodestar method to calculate an appropriate amount of attorney fees. Here, it is preferable to a straight percentage calculation because of the volatile nature of the value of cryptocurrency and because it will avoid a windfall result for ICON.

To determine whether attorney fees are reasonable using the lodestar method requires "multiplying a reasonable number of hours by a reasonable rate." *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020). As is set forth in the Wanger Declaration and the Declaration of Jason Gottlieb ("Gottlieb Decl."), ICON's attorneys spent 3,442.50 hours working on this case from the

---

[2] ICON argues that in addition to the "sizeable monetary recovery obtained by ICON for all ICX holders," it "also secured an important precedent for ICX and other cryptocurrency holders." Mot. 10. It posits that the judgment in this action "will confirm for the world that cryptocurrency exploits can be remedied by the courts," which will instill greater trust in both ICON's network and cryptocurrency networks generally. *Id.* The precedential benefit ICON has secured, such as it is, bolsters my conclusion that the common fund doctrine supports attorney fees for ICON.

[3] Monetary recovery is not a prerequisite for the common fund doctrine to apply; a fee award under this doctrine may be appropriate where the litigation conferred a substantial nonpecuniary benefit on the members of an ascertainable class. *See Mills*, 396 U.S., at 393 (discussing the common fund doctrine, and concluding that "[a]lthough the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a 'common fund' for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses.").

time that it was filed in August 2020 until November 2024, incurring fees totaling just over $3.1 million. *See* Wanger Decl. ¶¶ 21, 24-26; Wanger Decl. Exs. M-N; Gottlieb Decl. ¶ 13.[4] Three firms worked on the case for ICON: Manatt, Phelps & Phillips, LLP, Morrison Cohen, LLP, and Holland & Hart. Manatt attorneys logged 2,679.4 hours at rates ranging from $450-$1,400. Morrison Cohen attorneys logged 697.5 hours at rates ranging from $200-$1,200, and Holland & Hart attorneys logged only 65.6 hours at rates ranging from $310-$525. Mot. 14; *see* Wanger Decl.; Gottlieb Decl.

### 1. Reasonable Rates

In determining whether an hourly rate is reasonable, courts consider: (1) the "prevailing market rates in the relevant community;" (2) "the experience, skill, and reputation of the attorney:" (3) "the novelty and complexity of the issues;" (4) "the special skill and experience of counsel;" (5) "the quality of representation;" and (6) the "results obtained." *Vargas v. Berkeley Unified School District*, No. 16-CV-06634-WHO, 2017 WL 5991857, at *2 (N.D. Cal. Dec. 4, 2017) (citing *Gonzalez*, 729 F.3d at 1205-06; *Digital Reg of Texas, LLC v. Adobe Sys., Inc*, No. C-12-1971-CW, 2015 WL 1968388, at *3 (N.D. Cal. May 1, 2015)). Although the court "may permissibly look to the hourly rates charged by comparable attorneys for similar work," it "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). The "difficulty and skill level of the work performed, and the result achieved—not whether it would have been cheaper to delegate the work to other attorneys—must drive the district court's decision." *Id*.

The rates that ICON proposes for each of its attorneys are reasonable given the prevailing market rates, the quality of ICON's counsel, and the complexity of the issues. As ICON lays out in its declarations and accompanying exhibits, ICON's counsel—particularly Manatt and Morrison Cohen, who did most of the work—have significant experience litigating complex cryptocurrency

---

[4] ICON incurred an additional approximately $25,000 in fees in connection with drafting the motion for attorney fees itself, which it properly included in its proposed award. Wanger Decl. ¶ 26; *see Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1008 (N.D. Cal. 2012).

cases in this district. Counsel's rates were either at or below prevailing market rates for other comparable firms. *See* Wanger Decl. ¶¶ 6-7 (laying out Manatt partner Brad Seiling's hourly rate of $1,110/hour in 2021, $1,250/hour in 2022, $1,400/hour in 2023, and $1,485/hour in 2024, and other Manatt partners' comparable hourly rates); Gottlieb Decl. ¶¶ 7-8(a)-(b) (laying out Mr. Gottlieb's hourly rate of $705/hour in 2020 and $1,400/hour in 2024, and Morrison Cohen partner Michael Mix's hourly rate of $590/hour in 2020 and $975/hour in 2024).

Other courts in the Northern District have found counsel's rates to be reasonable. *See e.g.*, *Tracy Anderson Mind & Body, LLC, et al. v. Megan Roup, et al.*, 2023 WL 6890744, at *3 (C.D. Cal. Sep. 11, 2023) (finding Manatt lawyers' rates to be reasonable and awarding attorney fees and costs); *Love v. Mail on Sun.*, 2007 WL 2709975, at *12 (C.D. Cal. Sept. 7, 2007) *aff'd sub nom. Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010) (awarding $518,859 in attorney's fees and noting that "[t]he experience, reputation, and ability of the Manatt attorneys well-merit the fees sought"). I approve as reasonable ICON's attorneys' rates.

### 2. Reasonable Hours

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)). "The district court . . . should exclude from this initial fee calculation hours that were not reasonably expended." *Hensley*, 461 U.S. at 434 (cleaned up). Hours not reasonably expended are those that are "excessive, redundant, or otherwise unnecessary." *Id.*

Here, ICON seeks attorney fees for 3,442.50 hours of work. *See* Mot. 14. It provides declarations and relevant exhibits breaking down how those hours were spent. Manatt spent the lion's share of hours working on this case, clocking 2,679.4 hours throughout the course of litigation. Morrison Cohen spent 697.5 hours working on the case, and the Colorado firm Holland & Hart spent 65.6 hours. This is a reasonable number of hours for each firm, considering the length and complexity of this litigation. ICON's proposed hours are reasonable.

7

### 3.     Success Achieved

ICON's counsel achieved ICON's objectives in this litigation.  They demonstrated a high level of skill and professionalism while litigating in a novel environment without much direct precedent.  These factors support the award sought.

### C.     Other Costs

Reasonable litigation costs also are recoverable under a common fund theory of recovery. *See, e.g.*, *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023-24 (E.D. Cal. 2019) ("An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund.").  The award "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary" and "can include reimbursements for: (1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees . . . [the] standard of reasonableness of costs is to be given a liberal interpretation." *See id.* (collecting Ninth Circuit authority).

ICON incurred expert fees and consulting fees that were not insignificant, as laid out in the Wanger Declaration.  *See* Wanger Decl. ¶¶ 13 (setting forth expert fees for Dr. Joshua Gans), 11 (setting forth expert fees for Professor Josh Fairfield), 12 (setting forth expert fees for Paul Sibenik), 14 (setting forth consulting fees to Parameta); *see also* Wanger Decl. Exs. H, F, G. These costs are also recoverable because the common fund criteria have been met.  *See* discussion *supra*, Section I(A).

## II.     CONVERSION OF SEIZED ASSETS

Finally, ICON asks that I reconsider my decision set forth in the Order on Remedies *not* to order that the Seized Assets be converted back into ICX after ICON is awarded its attorney fees and costs but prior to their destruction.  A district court has the inherent power to reconsider and modify its interlocutory orders.  *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005).

ICON has consistently advocated that those Seized Assets that are currently held by the Receiver in forms *other* than ICX be converted back into ICX before they are destroyed.  It argues

8

1  that this is the only way to fully right Shin's wrong as it was experienced by all ICX holders. Shin
2  transferred approximately 2.1 million bug-generated ICX to exchange accounts held by family and
3  friends, and approximately 5 million bug-generated ICX to his own exchange accounts. *See* Dkt.
4  No. 173-5 at 4-8. Shin and his "transferees" sold the balance of the bug-generated ICX—totaling
5  approximately 5,335,203 ICX tokens—for other crypto or fiat currency in August 2020. *See* Shin
6  Remedies Brief [Dkt. No. 203] at 3. These sales were followed by a significant decline in the
7  price of ICX. In the two-week period between August 22, 2020, when Shin attacked the Network,
8  and September 5, 2020, when Shin's attack on the Network became known within the ICON
9  community, the price of ICX fell by approximately 40%. *See* Kim Decl. ¶¶ 43, 87; Kim Decl. Ex.
10 17. ICON argues that a judgment that does not require that the non-ICX portion of the Seized
11 Assets be converted back into ICX before they are destroyed "fails to remedy . . . the price-
12 reducing sales by Shin and his transferees of [these] more than 5.3 million bug-generated ICX."
13 Mot. 18. Regardless of what portion of that 40% drop was directly attributable to Shin's actions,
14 it is apparent that his wrongdoing contributed to an inexact depression of the ICX token's value.

15     After the parties' initial briefing on remedies, it appeared to me that destroying the Seized
16 Assets in whatever form they currently take would come closest to restoring all parties to the
17 position that they held prior to Shin's attack on the Network. After further briefing and discussion
18 at the February 26, 2025, hearing, I am persuaded that converting the Seized Assets back into ICX
19 after the Receiver pays ICON its fees and costs but prior to their destruction is more appropriate.
20 Scarcity of any cryptocurrency increases its value to the individual holder. The inverse occurred
21 for ICX holders when Shin obtained the bug-generated ICX. While no one can predict *exactly*
22 what impact the destruction of the Seized Assets will have on the value of ICX if those assets are
23 converted back into ICX first, that value will likely increase, to the benefit of ICX holders harmed
24 by Shin's conduct. It stands to reason that if the Seized Assets were destroyed without being
25 converted, that would benefit holders of the non-ICX assets. If any cryptocurrency holder should
26 benefit from the destruction of the Seized Assets, it is ICX holders who were initially injured, not

holders of the other cryptocurrencies currently found amongst the Seized Assets.[5]

As ICON suggests, one additional safeguard makes sense. To avoid any improper profit arising from the conversion of the Seized Assets back into ICX prior to their destruction, I ORDER that ICON and its Council members are prohibited from engaging in any sales of ICX during the period wherein the Receiver is converting the Seized Assets back into ICX. *See* Mot. 20, n.22.

## CONCLUSION

For the foregoing reasons, ICON's Motion for Attorney Fees and Costs is GRANTED. ICON is entitled to $3,471,594 in attorney fees and costs, to be paid by the Receiver prior to the destruction of the Seized Assets. ICON's request for partial reconsideration is also GRANTED; after the Receiver pays the fees and costs award to ICON, all remaining seized non-ICX assets shall be converted back into ICX and then destroyed. The Receiver shall file a declaration in the docket of this case when she has accomplished this task.

**IT IS SO ORDERED.**

Dated: March 3, 2025

William H. Orrick
United States District Judge

---

[5] Another justification that ICON gives for its proposed strategy is that, according to Kim, unless the Seized Assets are converted back into ICX prior to destruction, there is no way to confirm that they have been destroyed. *See* Mot. 19-20; Kim Decl. ¶¶ 19-20. This "proof of destruction" argument is unpersuasive. ICON points to no evidence suggesting that physical destruction of the flash drives currently holding the Seized Assets is insufficient to guarantee the destruction of the assets themselves.